CHARLES W. DAHLEN v. NEW YORK LIFE INSURANCE COMPANY.[1]

December 24, 1909.

Nos. 16,431—(77).

**Evidence — Instructions.**

The evidence in this a personal injury case sustains the verdict, and the instructions to the jury were correct.

Action in the district court for Hennepin county to recover $10,200 for personal injuries. The case was tried before Holt, J., and a jury which rendered a verdict in favor of plaintiff for $1,500. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*A. B. Darelius,* for appellant.

*Benton, Molyneaux & Morley,* for respondent.

[1] Reported in 123 N. W. 926.

109 M.—22

START, C. J.

The defendant during the times mentioned herein was the owner of a ten-story office building in the city of Minneapolis, known as the New York Life Building. It was equipped with four hydraulic lifts or elevators, two of them known as No. 1, a freight, and No. 2, a passenger, which received their motive power from a water tank on the top of the building through a common pipe, which divided at the sixth floor, so that from there down each elevator cylinder was supplied with water through a separate pipe. On May 13, 1908, the plaintiff, as an employee of the defendant, was operating No. 2, and was, as he alleged in his complaint, injured by reason of the negligence of the defendant in failing to keep the elevator and its appliances in a safe condition. He brought this action in the district court of the county of Hennepin to recover damages for his injury so received. There was a verdict in his favor for the sum of $1,500. The defendant appealed from an order denying its motion for judgment notwithstanding the verdict or for a new trial.

The defendant here urges that the trial court erred in denying its motion for judgment, because the evidence was not sufficient to establish its alleged negligence, and that it showed the plaintiff to have been guilty of contributory negligence, and, further, that it is entitled to a new trial for error in the instructions of the court to the jury.

It appears from the record that the starting, stopping, and regulation of the speed of the elevators were done by the operator by means of a lever, and also by a hand cable passing through the car, either of which could be used; that the elevators were equipped with two safety devices—the one being a button on the hand cable near the top and one near the bottom of the shaft, which operated a valve by which the car could be stopped, and the other being a governor connected with the clutch, which was situated under the car, and when the car descended too rapidly and reached the danger point the working of the governor would throw out the clutch and stop the car; that plaintiff had operated an elevator in the building for some seven or eight months in 1906, and had operated the elevator No. 2 from February, 1908, until the evening of May 13; and that in the forenoon of that day the hand cable on the freight elevator parted between the shives

under which it passed at the bottom of the elevator shaft when the freight elevator was passing from the ninth to the tenth floor of the building.

The record also shows that the plaintiff testified to the effect that about ten o'clock of the morning he was injured he had discharged passengers from elevator No. 2 upon the ground floor; that he was seated on the elevator seat, his car standing still, when the freight elevator struck the top of the shaft, and his elevator shot up to the second floor, fell down again to the ground floor, shot up at once to the second floor, and then fell down four or five feet below the ground floor, and that he thereby received severe bodily injuries and shock to his system; and, further, that his elevator ran all right before the accident and in twenty minutes thereafter.

The plaintiff's principal contention was that the jumping of his elevator was caused by the water supply running low in the supply tank, thereby introducing air into the cylinder of his elevator. The trial court submitted to the jury the questions whether there was air in the cylinder which caused it to jump up and down, and whether such alleged condition of the cylinder was due to the negligence of the defendant; also the other claims of the respective parties. The trial court specifically instructed the jury as follows: "The fact that the safety device under car No. 2 did not operate, if you find that to be a fact, may be in itself evidence showing negligence, provided it is proven that the emergency arose when it should have operated, if it had been in repair or working order."

The giving of this instruction is the basis of the defendant's first assignment of error, and the only one relating to the court's instructions to the jury. The defendant's objections to this instruction are that the evidence shows that the elevator could not have moved, as testified to by the plaintiff, unless he moved the lever or the hand cable, and, further, that it is misleading, in that it leaves the jury to infer that if the elevator was descending so rapidly as to be dangerous, and the safety device would not work, plaintiff would be entitled to a verdict, even though the movement of the car was caused by plaintiff himself moving the lever or hand cable, and, further, it unduly em-

phasized the negligence of defendant, based upon its failure to keep in repair the safety device.

It was not error to give the instruction, for it was based upon the hypothesis that the jury should find that the safety device did not operate, and that an emergency arose when it should have operated, if it had been in repair or working order. Such an emergency could not arise if the failure of the safety device to operate was due to the failure of the plaintiff to properly operate the elevator. There was evidence, although it was conflicting in some respects, to sustain a finding of the facts by the jury which were conditionally made the basis of the instruction. The evidence shows that the defendant, by its engineer, had possession and control of the elevators in the building, and that it was his duty to see that they were kept in repair and in good running order, and that the duty of the plaintiff was simply to operate his elevator. · It follows that, if the accident did occur by reason of the elevator not working properly while the plaintiff was operating it, without any fault on his part, proof of such fact would be sufficient prima facie to establish the negligence of the defendant. It is urged that the instruction as given was liable to mislead the jury for the reasons stated. It is difficult to understand how an intelligent jury could be misled by the instruction; but, if the defendant apprehended that they might, his remedy was to ask to have it made more specific.

The defendant further contends that the plaintiff's testimony as to how the accident occurred and his management of the elevator at the time is uncorroborated and so unreasonable and improbable that it ought to be rejected. That the plaintiff was injured while he was operating the elevator cannot seriously be questioned. It is quite obvious that his injury resulted either from his own mismanagement of the elevator or from the fact that it was not then in a safe condition. It is claimed by the defendant, in effect, that it appears from the opinion or expert evidence that the jumping up and down of the elevator as testified by the plaintiff could not have been caused by any condition of the elevator; hence, if it did so do, it was the result of the defendant's improper operation of it. The expert evidence was not conclusive, but conflicting, on this point. There was evidence

tending to show that, if air got into the cylinder of the elevator, it. would cause the car to jump up and fall back substantially as testified to by the plaintiff; that air could be introduced into the cylinder by the water running low in the tank on the top of the building; and, further, that if the freight elevator struck the ceiling with force there would be a vibration or "water pound" in the whole system. The question is not one as to the preponderance of the evidence, but whether there was any substantial evidence to sustain the verdict.

A consideration of the whole evidence leads us to the conclusion that the plaintiff was not guilty of contributory negligence as a matter of law, and that the verdict is fairly sustained by the evidence.

Order affirmed.