Nancy Price QUALLS,
Plaintiff–Appellee,

and

Mabel I. Cheatwood, Plaintiff,

v.

UNITED STATES ELEVATOR CORP.,
Defendant–Appellant

and

Montgomery Elevator Co., and Shawnee
Medical Center, Defendants.

No. 75729.

Supreme Court of Oklahoma.

Oct. 26, 1993.

David T. Ingram, Shawnee, for defendant-appellant.

James S. Steph, Okmulgee, for plaintiff-appellee.

OPALA, Justice.

Two issues are presented on certiorari: (1) Did the trial court commit reversible error by instructing on a *res ipsa loquitur* pattern of proof?  (2) Is there competent evidence to support the jury verdict?  We answer the first question in the negative and the second in the affirmative.

I

**THE ANATOMY OF THE LITIGATION**

Nancy Qualls [Qualls] and a friend were in an automatic elevator in the Shawnee Medical Center [Hospital] on December 9, 1987 when the elevator fell from the second floor and stopped suddenly in the basement.  Qualls claims to have suffered injuries to her back.  She brought a tort action

against both the Hospital, which owned the automatic elevator, and United States Elevator Company [U.S. Elevator or the Company].[1] The latter manufactured, installed and undertook (by maintenance contract with the Hospital) to service, repair and maintain the elevator. Qualls alleged U.S. Elevator had defectively manufactured the product and the defendants (Hospital and U.S. Elevator) had negligently maintained it. The Hospital cross-claimed against U.S. Elevator for indemnity.

The trial court refused submission of the case on a plaintiff-pressed products liability theory, but allowed the claim to go to the jury against both defendants based on their negligence. Over defendants' objections, the court instructed on the *res ipsa loquitur* pattern of proof.[2] Qualls prevailed *only against U.S. Elevator.* The verdict assessed her damages at $50,000.00. The trial court denied U.S. Elevator's post-verdict motion for judgment notwithstanding the verdict [JNOV][3] and entered judgment (a) for the Hospital (denying recovery) and (b) in Qualls' favor against U.S. Elevator.

On appeal by U.S. Elevator, the lawyer-staffed division of the Court of Appeals reversed the trial court's judgment on jury verdict and remanded the cause with directions to enter judgment for that entity. The appellate court concluded that (1) a *res*

*ipsa loquitur* instruction was not warranted because Qualls failed to prove that the Company had *exclusive control* of the elevator when it fell and (2) Qualls failed to prove that U.S. Elevator's want of due care directly caused her bodily harm. We granted certiorari and now reinstate and affirm the trial court's judgment.

## II.

### CONTENTIONS ON CERTIORARI

Qualls urges on certiorari that the Court of Appeals erred *by requiring proof that an identifiable negligent act of U.S. Elevator proximately caused her injuries.* According to Qualls, she was entitled to rely upon a *res ipsa loquitur* pattern of proof. We are urged that whether U.S. Elevator had *exclusive control* of the elevator was a question of fact which the triers resolved in her favor.

U.S. Elevator asserts that because Qualls failed to prove her injuries resulted from an identifiable negligent act, she could not recover on a negligence theory, and since she *attempted* to show some specific negligent acts, she was barred from the benefit of *res ipsa loquitur.* According to U.S. Elevator, Qualls' claim must fail because she did not prove that the elevator was in its exclusive control at the critical time.

---

1. Defendant Montgomery Elevator was dismissed from the action (without prejudice) before trial. Plaintiff Mabel Cheatwood, who alleged to have been injured in the same incident, dismissed her claim with prejudice.

2. The text of the *res ipsa loquitur* instruction (OUJI–CIV 9.13, as modified) is:

   "No. 11. In addition to the rules which have been stated with respect to negligence, there are situations in which a jury may, but is not required to find negligence from the mere fact that the accident occurred.

   To sustain her burden of proof on this theory, the Plaintiff, Nancy Qualls, has the burden of proving each of the two following propositions:

   1. That the injury was caused by the fall of the elevator which was under the exclusive control and management of *either* the Defendant U.S. Elevator Co. *or* the Defendant Shawnee Medical Center.

2. That the event causing the injury to the Plaintiff, Nancy Qualls, was of a kind which ordinarily does not occur in the absence of negligence on the part of the person controlling the elevator.

   If you find that these propositions are more probably true than not true, then you are permitted but not required to find that Defendant which you find had the exclusive control and management of the elevator was negligent." (Emphasis added.)

3. The terms of 12 O.S.1991 § 698 provide in pertinent part:

   "When a motion for directed verdict which was made at the close of all the evidence should have been granted, the court shall, at the request of the moving party, render judgment in his favor though a verdict has been found against him...."

## III.

### THE *RES IPSA LOQUITUR* PATTERN OF PROOF

■ *Res ipsa loquitur* [4] is a pattern of proof which may be applied to an injury that does not occur in the usual course of everyday conduct unless a person who controls the instrumentality likely to produce injury fails to exercise due care to prevent its occurrence.[5] With the aid of *res ipsa loquitur* negligence may be inferred from the harm without the aid of circumstances pointing to the responsible human cause.[6] The fundamental element of this evidentiary process is the "control of the instrumentality" which caused the damage.[7] Whether a case is fit for the application of *res ipsa loquitur* presents a question of law; it is a judicial function to determine if a certain set of circumstances permits a given inference.[8]

■ Among the *earliest* negligence plaintiffs to benefit from the evidentiary process introduced by *res ipsa loquitur* were *passengers in public transportation conveyances* [9] injured, while the appliance in which they were riding remained under the defendant's management, in a course of unexplained events that, according to human experience, do not ordinarily happen if due care is exercised.[10] An automatic elevator's sudden descent may raise a rebuttable inference of negligence under the *res ipsa loquitur* evidentiary process if the occurrence was due to some mechanism's failure which would not ordinarily happen when due care is exercised in the appliance's construction, installation and maintenance by the person charged with those responsibilities.[11] Elevator mechanisms are hidden from view, and since they consist of mechanical, electrical, and sophisticated electronic systems, they are at any rate not easily capable of manifesting a defect. Once the button is pressed, a rider has no control whatsoever over the events which follow. Even when, after the fact, experts are able to examine the physical

---

**4.** The use of the Latin phrase *"res ipsa loquitur"* ("the thing speaks for itself") has bedeviled the issue of proof of fault. *The phrase had its origin in a statement by Erle, C.J.,* in Scott v. London and St. Katherine's Docks Co., 3 H & C 596 at 601, Ex Ch, 159 ER 665 at 667 (1865):

> "There must be reasonable evidence of negligence. But where the thing is shown to be under the management of the defendant or his servants, and the accident is such, as in the ordinary course of things, does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care."

*See* Cooke and Oughton, COMMON LAW OF OBLIGATIONS, 180 (Butterworths 1993).

**5.** *Thompson v. Presbyterian Hospital,* Okl., 652 P.2d 260, 265 (1982).

**6.** *Thompson, supra note* 5 at 265.

**7.** *Thompson, supra* note 5 at 265; *St. John's Hospital and School of Nursing v. Chapman,* Okl., 434 P.2d 160, 166 (1967).

**8.** *Thompson, supra* note 5 at 266; *Turney v. Anspaugh,* Okl., 581 P.2d 1301, 1304 (1978).

**9.** Transportation appliances came within the purview of *res ipsa* during the early development of the process, perhaps because passengers are passive users who are at the mercy of the carrier. For *res ipsa loquitur* to be invocable, the injury must have resulted "from the breaking of machinery ... or something improper or unsafe ... in the appliances of transportation." *See* CHAPIN ON TORTS at 537 (West 1917), quoting from *Thomas v. Philadelphia & R.R. Co.,* 148 Pa. 180, 23 A. 989 (1892).

**10.** *Ales v. Ryan,* 8 Cal.2d 82, 64 P.2d 409, 417 (1936); *Capital Transit Co. v. Jackson,* 80 U.S.App.D.C. 162, 149 F.2d 839, 161 ALR 1110 (1945); *Smith v. Pennsylvania Central Airlines Corporation,* 76 F.Supp. 940 (1948); *Ybarra v. Spangard Airlines Corporation,* 25 Cal.2d 486, 154 P.2d 687, 690–691, 162 ALR 1258 (1944). In *Ales* the trial court permitted the plaintiff to invoke *res ipsa* to establish a prima facie case for a wrongful death after an operation and the appellate court approved; a sponge had been left in the patient's abdominal cavity. The opinion's one-sentence rationale is: "That the doctrine of *res ipsa loquitur* is as appropriate to the facts of the instant case as it is to automobile accidents, *elevator cases,* gas explosions, bursting water mains, shipping cases, animals upon highways, and the many other situations to which it has been applied, is supported both by the rule of analogy and by definite authority." (Emphasis added.)

**11.** *See, e.g., Senft v. Ed. Schuster & Co.,* 250 Wis. 406, 27 N.W.2d 464, 465 (1947); *Dahlen v. New York Life Ins. Co.,* 109 Minn. 337, 123 N.W. 926, 927 (1909).

evidence, proof is not easy to come by. A defendant's knowledge of the incident's cause often would exceed, if not indeed supersede, that of the plaintiff.[12] In sum, while invocability of *res ipsa loquitur* must be assessed on the facts of each case,[13] its application to transportation appliances is not without a firm foundation in early and recent national *res ipsa* jurisprudence.

IV.

**THE TRIAL COURT DID NOT COMMIT REVERSIBLE ERROR BY INSTRUCTING THE JURY ON A *RES IPSA LOQUITUR* PATTERN OF PROOF AND THERE IS COMPETENT EVIDENCE TO SUPPORT THE JURY VERDICT**

U.S. Elevator concedes that the cause of Qualls' bodily harm (if any) was the elevator's descent from the second floor of the hospital into the basement. *In dispute* between the parties *is whether* (a) *Qualls' proof to show the elevator in U.S. Elevator's exclusive control is sufficient to support a res ipsa loquitur instruction* and (b) *there is competent evidence to support the jury verdict.*

Whether a defendant at the critical point in contest had "exclusive control" of an instrumentality in the *res ipsa loquitur* sense often constitutes a mixed question of law and fact. At the threshold the issue is one of law for the judge. It calls for the trial court to decide whether the evidence may lead reasonable persons to reach different conclusions.[14] If the proof is not so overwhelmingly one-sided as to make the control element a matter of law, the question must go to the jury.[15] Where there is *any* competent evidence to support the verdict, the judgment will be affirmed unless otherwise shown to be contrary to law.[16]

U.S. Elevator, who manufactured, installed and undertook (by maintenance contract with the hospital) to service, repair and maintain the elevator, urges that *exclusive control* must be measured by *ownership* and *management* of the instrumentality causing the injury and argues that an entity responsible for its service, maintenance and repair lacks the *critical control* which would entitle plaintiff to rely on a *res ipsa loquitur* pattern to prove the maintenance contractor's negligence.[17] A narrow reading of the "exclusive control" element U.S. Elevator advances for our adoption would confine *res ipsa* to cases where there is but one defendant.

**12.** "[T]he particular force ... of [*res ipsa*], regarded as a presumption throwing upon the party charged the duty of producing evidence, consists in the circumstance that the chief evidence of the true cause, whether culpable or innocent, is practically accessible to [the defendant] but *inaccessible to the injured person.*" (Emphasis added.) 9 Wigmore, Evidence § 2509, p. 382 (3d Ed.).

**13.** *Res ipsa loquitur is not available in every case* in which an accident occurs *in or near an automatic elevator. See, e.g., Seay v. General Elevator Co.*, Okl., 522 P.2d 1022, 1027 (1974), where the *res ipsa loquitur* evidentiary process was held not to be invocable by a plaintiff injured in an automatic elevator door-closing incident because she failed to demonstrate that the instrumentality was in the exclusive control of the manufacturer. There, the plaintiff (1) did not take reasonable precautions, such as holding the door open with her hand as she exited, and (2) was aware that failure to do so could result in the kind of bodily harm that occurred.

**14.** *Freuchting v. Gilley*, Okl., 259 P.2d 530, 533 (1953); *Dickinson v. Whitaker*, 75 Okl. 243, 182 P. 901, 904 (1919).

**15.** *See, e.g., Furr v. McGrath*, Okl., 340 P.2d 243, 250 (1959).
   Other jurisdictions agree. For example, in *Gentles v. Lanctot*, 145 Vt. 396, 491 A.2d 336, 337 (1985), the court held that *prima facie* satisfaction of a *res ipsa loquitur* control element requires only "reasonably supportive evidence", and that whether such an element is satisfied presents a question for the trier of fact.

**16.** *Silk v. Phillips Petroleum Co.*, Okl., 760 P.2d 174, 176 (1988).

**17.** Appellant cites as authority *Seay, supra* note 13 and *Briscoe v. Oklahoma Natural Gas Company*, Okl., 509 P.2d 126, 128 (1973). Both of those cases are factually distinguishable. For a discussion of *Seay, see supra* note 13. The defendant in *Briscoe* neither *installed* nor *maintained* the natural gas service line where the explosion occurred.

Exclusive control,[18] which is a flexible concept with a much broader scope than that urged by the Company, does no more than eliminate, within reason, all explanations for the injurious event other than the defendant's negligence [19]—i.e., it shows that defendant's negligence *probably* caused the accident.[20] The term implies *more than actual possession and use*

*at the time of the occurrence. The required control element may be shifted and, under some circumstances, it may be shared.*[21] In short, control may rest in *one who assumes responsibility for the fitness of an instrumentality for its intended use.*[22] If an elevator is covered by a maintenance agreement, the ambit of a

18. Some legal commentators are highly critical of the exclusive control requirement for invoking a *res ipsa loquitur* pattern of proof: "It would surely be at once more accurate and less confusing to abandon all reference to 'control' and postulate simply that the apparent cause of the accident must be such that the defendant would most probably be responsible for any negligence...." *See* Cooke, supra note 4 at 181, quoting J. Fleming, Law of Torts, 305–306. *See also* Prosser & Keeton on Torts, 5th ed. pp. 250–51 (1984).

19. *Dermatossian v. N.Y. City Transit Authority,* 67 N.Y.2d 219, 501 N.Y.S.2d 784, 492 N.E.2d 1200, 1205 (1986). *See also Corcoran v. Banner Super Market, Inc.,* 19 N.Y.2d 425, 280 N.Y.S.2d 385, 227 N.E.2d 304, 306 (1967).

20. This court's flexible interpretation of the *exclusive control* requirement is consistent with mainstream American jurisprudence. *See, e.g., Ballow v. Monroe,* 699 P.2d 719, 721 (Utah 1985); *Tompkins v. Northwestern Union Trust Co.,* 198 Mont. 170, 645 P.2d 402, 406 (1982); *Parrillo v. Giroux Co.,* 426 A.2d 1313, 1319–20 (RI 1981); *Gilbert v. Korvette, Inc.,* 457 Pa. 602, 327 A.2d 94, 101–02 (1974). *See also Prosser & Keeton, supra* note 18 at 251 n. 98. Restatement (Second) of Torts, § 328D *requires only that other reasonably probable causes be sufficiently eliminated by the evidence.* The pertinent text of § 328D of the Restatement (Second) of Torts is:
"(1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when
(a) the event is of a kind which ordinarily does not occur in the absence of negligence;
(b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and
(c) the indicated negligence is within the scope of the defendant's duty to the plaintiff."
Comment (g) to § 328D explains that "[e]xclusive control is merely one fact which establishes the responsibility of the defendant; and if it can be established otherwise, exclusive control is not essential to a *res ipsa loquitur* case."
Restatements of the common law on chosen subjects, which are produced by the American Law Institute, a private organization of judges, practitioners, and law teachers, are scholarly *"codifications of American common law in various substantive law areas, based upon the decisions of the courts of last resort of the states."*

(Emphasis added.) Winters, The Contribution of Professional Organizations to Stability and Change Through Law 265, 269 (1963). For a history of the Institute, see Goodrich, The Story of the American Law Institute, 1951, Wash. U.L.Q. 283; see also Krause, Gans, 1 The American Law of Torts § 1:18 at 61 (1983); *Prosser and Keeton, supra* note 18, § 3 at 17.

21. We need not decide today whether a *res ipsa loquitur* evidentiary process may be invoked against multiple defendants who are in joint control of an instrumentality, since in this cause (1) the jury was instructed it could find that *either* the Hospital *or* U.S. Elevator *was in control* and (2) only U.S. Elevator was found liable.

*Other jurisdictions have held res ipsa loquitur invocable against two or more defendants exercising joint or successive control of the instrumentality causing the injury. See, e.g., McGowan v. Tri–County Gas Company,* 483 S.W.2d 1, 5 (Mo.1972); *Meny v. Carlson,* 6 N.J. 82, 77 A.2d 245, 250–51 (1950); *Bond v. Otis Elevator Co.,* 388 S.W.2d 681 (Tex.1965); *Ybarra, supra* note 10, 154 P.2d at 690–691. In a fit case *"it is for the jury to say whether either or both had control." Greet v. Otis Elevator Co.,* 187 A.2d 896, 898 (D.C.App.1963).
In most jurisdictions practical considerations of management and control, rather than possession, are determinative of exclusive control. Defendants need not have *continuing* control and management, so long as the action of one defendant does not break the chain of causation which links the other defendant to the incident and the latter has the *right to exercise control. Domany v. Otis Elevator Co.,* 369 F.2d 604 (6th Cir.1966), *cert. denied* 387 U.S. 942, 87 S.Ct. 2073, 18 L.Ed.2d 1327 (1967), applying Ohio law. *See* Annotation, Applicability of Res Ipsa Loquitur in Case of Multiple, Nonmedical Defendants-Modern Status, 59 ALR 4th 201, §§ 30–31 (1988).

22. For a discussion of the control element, *see Cosden v. Wright,* 202 Okl. 211, 211 P.2d 523, 528 (1949); *Laffoon Oil Co. v. Flanagan,* Okl., 330 P.2d 194 (1958). *See also Lynch v. Precision Machine Shop, Ltd.,* 93 Ill.2d 266, 66 Ill.Dec. 643, 443 N.E.2d 569 (1982), where control sufficient to warrant a *res ipsa* charge had been shifted to an independent contractor hired to supervise the repair of a boring-mill gear box which malfunctioned, causing property damage.

maintenance contractor's duty to third persons may be measured by the nature and scope of its contractual undertaking.[23]

■ The contract in this case provides that the Company will maintain the elevator, using skilled, trained personnel, supervised and directly employed by the Company, and *that it will regularly and systematically examine, adjust, lubricate, and repair or replace the machinery.*[24]

According to U.S. Elevator exclusive control as a matter of law must be found to have been exercised *only* by the Hospital. This is urged because hospital employees (a) rode the elevator once a day to inspect its operation, (b) had, on occasion, added oil to the elevator reservoir, and (c) called U.S. Elevator if service (other than a monthly routine service call) was needed.

The triers may have surmised that even with the Hospital's daily inspection ride, its employees could not have discovered any more about the elevator's defects than any other passenger. If the hospital had discovered a malfunction, it could do no more than notify the Company. No evidence is present in the record before us to show that the Hospital had discovered a malfunction in time to prevent the elevator's harm-dealing fall or sudden descent. We hence find the proof sufficient to support the triers' reasonable inference that the Hospital and its employees—much like other passengers—were completely dependent upon U.S. Elevator for the appliance's safe operation.

■ Qualls first claimed that the elevator was under the exclusive control of the Hospital and then asserted that by virtue of the service contract the instrumentality was under U.S. Elevator's *exclusive control*. These inconsistent versions, U.S. Elevator urges, support *its* position that neither defendant actually had exclusive control, and that the *res ipsa loquitur* instruction was improperly included.

The trial court charged the triers that the *res ipsa loquitur* pattern of proof would permit them to find *either*[25] the Hospital *or* U.S. Elevator had exclusive control of the harm-dealing elevator. Our pleading regime does not require Qualls to choose at her peril between two alternative fact versions—one that would place exclusive control in the Hospital and the other in U.S. Elevator. When the current Pleading Code was adopted in 1984, Oklahoma's legal system irreversibly passed from the fact pleading regime of yesteryear to the present federal notice pleading variety.[26] Current law does not require a party to make a presubmission election that would embrace a single version ˏof consistent facts.[27] While inconsistent judgments and double recovery cannot be allowed, a party is not prevented from prosecuting a claim based on two or more alternative fact versions.[28]

Because Hospital employees' daily use of the elevator and their duty to report any malfunction to U.S. Elevator *did not*, as a matter of law, *divest U.S. Elevator of exclusive control*, the triers could have found that at the critical time in question *either* the Hospital *or* U.S. Elevator had exclusive control of the instrumentality. The proof adduced at *nisi prius* clearly supports the court's *res ipsa loquitur* charge and there

---

**23.** *Williams v. Otis Elevator Co.,* 409 Pa.Super. 486, 598 A.2d 302, 303 (1991); *Evans v. Otis Elevator Co.,* 403 Pa. 13, 168 A.2d 573, 576 (1961).

**24.** Included in the contract is a *comprehensive list of machinery covered by its terms.*

**25.** *See* the trial court's instruction on *res ipsa loquitur, supra* note 2.

**26.** *See* 12 O.S.Supp.1984 §§ 2001 *et seq.* (now 12 O.S.1991 §§ 2001 *et seq.*).

**27.** With our adoption of federal notice pleading, both the plaintiff's compulsory presubmission election of remedies and forced presubmission choice of a single version of the facts became an anachronism. 12 O.S.1991 § 2008(E)(2); *Howell v. James,* Okl., 818 P.2d 444, 446–448 (1991). The pertinent terms of § 2008(E)(2) are:

"A party may set forth, and *at trial rely on,* two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses. * * *"

**28.** *Howell, supra* note 27 at 447.

is competent evidence to support the verdict.

## V.

### *NO* PROOF OF SPECIFIC NEGLIGENT ACTS WHICH DIRECTLY CAUSED THE ELEVATOR'S FALL WAS ADDUCED DURING THE TRIAL

U.S. Elevator claims error in allowing Qualls to prove the elevator's descent was caused by specific acts of negligence. It is urged that this made a *res ipsa loquitur* instruction impermissible.[29] *No specific cause of the elevator's rapid and unexpected December 9 descent or its fall to the basement was alleged.* No proof of specific negligent acts which directly caused this occurrence was adduced at trial; nor was its introduction *ever attempted.*[30] We hence postpone to another day a pronouncement on what U.S. Elevator perceives as an *impermissible combination,* outside the context of medical malpractice litigation,[31] *of two incompatible methods for proving negligence*—reliance on specific acts of want of due care and concurrent dependence on *res ipsa* evidentiary process.[32]

### SUMMARY

The trial court did not err by instructing the jury on the *res ipsa loquitur* pattern of

proof, nor by denying the Company's quest for directed verdict or its judgment notwithstanding the verdict. The verdict which finds the Company liable *qua* maintenance provider while exonerating the Hospital as owner and manager, is supported by competent evidence.

**THE COURT OF APPEALS' OPINION IS VACATED; THE TRIAL COURT'S JUDGMENT IS REINSTATED AND AFFIRMED.**

LAVENDER, V.C.J., and HARGRAVE ALMA WILSON, KAUGER, SUMMERS and WATT, JJ., concur.

HODGES, C.J., dissents.

SIMMS, JJ., concurs in part and dissents in part.

---

**29.** U.S. Elevator rests its "improper combination of theories" argument upon cases decided *before* forced presubmission election of a single version of the facts became antiquarian lore. *See Tillery v. Ellison,* Okl., 345 P.2d 434, 440 (1959); *Bewley v. Western Creameries,* 177 Okl. 132, 57 P.2d 859, 860 (1936); *Chapman, supra* note 7 at 169. For citation to the Pleading Code, *see supra* note 26. For the explanation that a party may, at trial, rely on alternative fact versions, *see supra* note 27.

**30.** Qualls' evidence includes proof that (a) the elevator had malfunctioned in the past, (b) problems had recurred despite repeated attempts by U.S. Elevator to resolve them and (c) U.S. Elevator was often tardy in responding to the Hospital's complaints. Earlier problems included leaking hydraulic fluid and the elevator's failure to reset itself when a service interruption occurred. U.S. Elevator had made repairs several months before the incident in question and no complaints had arisen in the interim. No link was forged between the earlier problems and the elevator's sudden fall. This evidence tends to establish U.S. Elevator's control of the

elevator and to explain the meaning given by the parties to the maintenance agreement. It was hence permissible for the jury to infer that the Hospital was dependent upon U.S. Elevator for the elevator's safe operation.

**31.** For the application of statutory *res ipsa loquitur* in medical malpractice cases (76 O.S.1991 § 21), see *Eversole v. Oklahoma Hosp. Founders,* Okl., 818 P.2d 456, 461 (1991); *Sisson By and Through Allen v. Elkins,* Okl., 801 P.2d 722, 724 (1990); *Middlebrook v. Imler, Tenny & Kugler, M.D.'s,* Okl., 713 P.2d 572, 578 (1985).

**32.** Because the evidence supports the verdict based upon a *res ipsa loquitur* pattern of proof, we must affirm the judgment. *See* 12 O.S.1991 § 78, whose pertinent terms are:

> "The court ... must disregard any error or defect in the pleadings or proceedings *which does not affect the substantial rights of the adverse party;* and no judgment shall be reversed or affected by reason of such error or defect." (Emphasis added.)