1997 OK 139

Roger MITCHELL, Plaintiff–Appellant,

v.

Wesley COX d/b/a Cox IGA, Defendant–Appellee.

No. 88664.

Supreme Court of Oklahoma.

Nov. 4, 1997.

Jack D. Crews, Eddie L. Carr, Tulsa, for Plaintiff–Appellant.

Gerald E. Durbin, II, David B. Donchin, Durbin, Larimore & Bialick, Oklahoma City, for Defendant–Appellee, ONEOK Resources Company.

Frederick Dorwart, J. Michael Medina, Richard J. Cipolla, Jr., Frederic Dorwart, Lawyers, Tulsa, for Defendant–Appellee.

WATT, Justice.

¶ 1  Plaintiff Mitchell sued Defendant Cox IGA for damages arising from an accident occurring on Cox's premises on July 8, 1993. Mitchell, an employee of Farm Fresh, Inc., had unloaded about 130 cases of milk from the bed of his delivery truck onto the platform of a hydraulic lift that was attached to the outside of the Cox IGA building, located in Newkirk, Oklahoma. The lift was designed to lower cargo from the level of the truck bed from which it had been unloaded to the ground. Mitchell and a Cox employee, who was operating the lift, were standing on its platform. While Cox's employee lowered the lift, two chains that were part of its mechanism parted, causing the platform to fall approximately three feet to the ground and injure Mitchell.

## FACTS AND PROCEDURAL HISTORY

¶ 2  The lift was a part of Cox's grocery store operation and was owned and maintained by him. Leaming Construction and Manufacturing Company installed it for Cox's predecessor, C & B IGA, in 1981. Leaming modified a fork lift's lift mechanism for C & B and attached it to the side of C & B's building. While C & B had the store, Leaming repaired damage caused by trucks having struck the lift on three or four occasions. Cox bought the store in August 1992. Between Cox's acquisition of the store and the Mitchell accident Leaming worked on the lift on only one occasion, to replace a hydraulic pump that failed.

¶ 3  Following Mitchell's accident, Leaming Construction and Manufacturing repaired the lift for Cox. The Leaming employee who did the repair work disposed of the chains that had failed after he replaced them.

¶ 4  Mitchell retained an expert, William R. Coleman, who prepared an affidavit and

testified in a deposition taken by Cox's lawyers. Coleman's testimony revealed that he was a Registered Professional Engineer, employed as a Consulting Engineer with Associated Metallurgists, located in Norman, Oklahoma. He had studied the design, operational characteristics, and failure modes of lifting equipment. Coleman testified that he had reviewed the depositions of Mitchell, Cox, and two of Cox's employees, as well as the affidavit of Les Leaming, who had installed and serviced the lift. He also consulted with Leaming concerning the capabilities of the lift, inspected the lift, and reviewed photographs of it taken after Mitchell's accident. Although the photographs Coleman referred to are not part of the record here, he testified that they revealed damage to the structural framework and cargo bed of the lift, which showed that the lift was in a state of disrepair. Coleman also concluded that Cox had negligently failed to maintain the lift, and that it should have been retired from service.

### ISSUE

¶5 The sole issue here is whether the trial court erred in granting Cox's motion for summary judgment? We answer "yes" to the question.

### DISCUSSION

¶6 In deciding whether the trial court erred in granting Cox's motion for summary judgment, we must examine a sub-issue:

Based on the record, may it be said that, as a matter of law, an instruction on *res ipsa loquitur* would be inappropriate at a trial of this case?

We answer "no."

■ ¶7 Preliminary to our discussion of the specific issue we note the standard of review when considering the propriety of a trial court having granted a motion for summary judgment:

... all inferences and conclusions to be drawn from the underlying facts contained in the record should be viewed in the light most favorable to the party opposing the motion for summary judgment.

*Rose v. Sapulpa Rural Water Co.,* 1981 OK 85, 631 P.2d 752, 754.

*An Instruction on The Res Ipsa Loquitur Doctrine May Be Appropriate if the Proof at Trial Were Consistent With Record Here.*

■ ¶8 In *Qualls v. U.S. Elevator Corp.,* 1993 OK 135 ¶7, 863 P.2d 457, 460 we described *res ipsa loquitur*:

*Res ipsa loquitur* is a pattern of proof which may be applied to an injury that does not occur in the usual course of everyday conduct unless a person who controls the instrumentality likely to produce injury fails to exercise due care to prevent its occurrence.... The fundamental element of this evidentiary process is "the control of the instrumentality" which caused the damage.

[Footnotes omitted.] There we held that a *res ipsa loquitur* instruction was proper in a case where a passenger was injured when an automatic elevator in a hospital had failed. We held that because the plaintiff had no control over the elevator's mechanisms after she pressed the button to put it into operation, it was within the exclusive control of the defendant elevator maintenance company that had a maintenance contract on the elevator.

■ ¶9 When applied by the trier of fact, the *res ipsa loquitur* doctrine gives the plaintiff the benefit of an inference that the defendant's negligence was the cause of the failure of an instrumentality if (1) the instrumentality was within defendant's exclusive control when it failed, and (2) failure of such an instrumentality ordinarily does not occur "when due care is exercised in the appliance's construction, installation, and maintenance by the person charged with those responsibilities." *Qualls,* 863 P.2d at 460. The reason for the rule is that, even after examination by plaintiff's experts following an accident, it is often difficult to develop evidence concerning negligence. Under such circumstances it is fairer to require the party who controlled and was responsible for the instrumentality to come forward with proof of the reason for the instrumentality's failure than

to require the plaintiff, who had no control over it, to do so.

■ ¶ 10  Here Mitchell alleges that the lift was within the exclusive control of Cox's employees; Mitchell was a passenger who had to rely on Cox and his employees for his safety while he was on the lift. These facts alone show that it would be inappropriate to say as a matter of law that Mitchell would not be entitled to a *res ipsa loquitur* instruction.

¶ 11  The Court of Civil Appeal's opinion relied on the fact that the lift was outside instead of enclosed as had been the elevator in *Qualls* as a justification for its conclusion that *res ipsa loquitur* was not available to Mitchell. The opinion also relied on deposition testimony that delivery truck drivers had, at other times, operated the lift themselves, and that Cox's employees regularly inspected the lift and oiled its chains. These factors are insufficient to deprive Mitchell of a right to have the jury instructed on the issue, they are instead for the trier of fact to consider in deciding whether to apply *res ipsa loquitur*.

■ ¶ 12  The lift was a heavy, complex, and potentially dangerous, piece of industrial machinery. It was owned by Cox and he and his employees were responsible for its safe operation. Mitchell was unable to protect himself while he was on the lift. He had to rely on Cox and his employees to preserve his safety. Under the circumstances it is fair to allow submission of the *res ipsa loquitur* pattern of proof here. We stress that the doctrine affords but an option for the jury. The Uniform Instruction on *res ipsa loquitur* tells the jury that it "may but is not required to, find negligence from the mere fact that the accident occurred." OUJI–CIV 9.13. Thus, a *res ipsa loquitur* instruction does not necessarily relieve a plaintiff of the obligation to prove negligence, it merely gives the jury the opportunity to do so.

¶ 13  The Court of Civil Appeals's opinion relied on *Avard v. Leming*, 1994 OK 121, 889 P.2d 262 and *National Union Fire Insurance Co. v. Elliott*, 1956 OK 182, 298 P.2d 448, 451 in support of its conclusion that the *res ipsa loquitur* doctrine was unavailable to

Mitchell as a matter of law. Neither *Avard* not *Elliott* supports the opinion's affirmation of the trial court's summary judgment.

¶ 14  *Avard* did not involve hazardous mechanical equipment. There, a baby sitter stepped on a sliver of glass in the carpet of the defendants, for whom she was sitting. Plaintiff did not show where the glass came from, nor that defendants had any knowledge of its presence before plaintiff stepped on it. In *Elliott*, plaintiff's loss was caused by a fire that started near defendant's truck but plaintiff could not prove that defendant's truck started the fire. Thus both *Avard* and *Elliott* are distinguishable from the facts presented by the record here.

¶ 15  If the proof at trial be consistent with the evidentiary material presented in this record, a *res ipsa loquitur* instruction may not be inappropriate, and the ultimate decision as to whether the *res ipsa loquitur* pattern of proof supports the claim must be made by the trier of fact.

CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS OPINION VACATED; JUDGMENT OF DISTRICT COURT REVERSED AND MATTER REMANDED WITH INSTRUCTIONS TO PROCEED IN A MANNER NOT INCONSISTENT WITH THIS OPINION.

¶ 16  KAUGER, C.J., SUMMERS, V.C.J., and HODGES, LAVENDER, OPALA and ALMA WILSON, JJ., concur.

¶ 17  SIMMS, J., concurs in judgment.

HARGRAVE, J., concurs in part, dissents in part.

SIMMS, Justice, concurring in judgment.

I agree with the Court's opinion insofar as it finds that the issue presented is whether the trial court erred in granting summary judgment and I join its holding that the trial court did err and the matter should therefore be reversed and remanded for trial. I do not, however, join the Court's consideration of res ipsa loquitur and its decision that an instruction on res ipsa loquitur would be appropriate in the event this case should go to trial and certain evidence should be ad-

duced. First, because that issue is only speculative and the court's answer is, of course, mere dicta. Second, because the answer is wrong.

Res ipsa loquitur is a rule of evidence. It is a traditional rule of justice and necessity which is applied in those few peculiar situations where the proof of the specific negligent act is within the defendant's power to control and beyond the plaintiff's. The purpose is to aid plaintiff in making a prima facie case of negligence on the part of the defendant, without proof of specific acts of negligence, by allowing the trier of fact to infer negligence as legitimate deduction of fact from those fundamental facts which are established by direct evidence. Res ipsa loquitur and ordinary reliance on specific acts showing defendant's failure to exercise due care are incompatible methods of proving negligence. Res ipsa loquitur supplies an inference of negligence when specific evidence of negligence is not available; it is not permissible in a case such as this one may be (if it goes to trial) where evidence of specific acts of negligence is available. Where there is evidence of specific acts or omissions of defendant to establish negligence, the doctrine does not apply. *Flick v. Crouch, Okl.,* 555 P.2d 1274 (1976); *E.S. Billington Lumber Co. v. Cheatham,* 181 Okl. 402, 74 P.2d 120 (1937); *Bewley v. Western Creameries, Inc.,* 177 Okl. 132, 57 P.2d 859 (1936). Res ipsa loquitur is not a "sub-issue" in this case and the Court errs in treating it as one.