2010 OK 10

Donald Earl DEWEESE and Pamela Deweese, Plaintiffs/Appellees/Petitioners,

v.

PATTERSON UTI DRILLING COMPANY, a Limited Partnership, Defendant/Appellant/Respondent.

No. 101,686.

Supreme Court of Oklahoma.

Feb. 9, 2010.

As Corrected Feb. 11, 2010.

Donald R. Liles, Aaron R. Sims, Liles & Sims, P.L.L.C., Woodward, Oklahoma, for Plaintiffs/Appellees.

Richard E. Hornbeek, Kevin E. Krahl, James S. Daniel, Hornbeek, Krahl Vitali & Braun, P.L.L.C., Oklahoma City, Oklahoma, for Defendants/Appellants.

EDMONDSON, C.J.

¶ 1 The issue on certiorari is whether the Court of Civil Appeals erred when it reversed the judgment entered upon a jury verdict in favor of plaintiffs, Donald Deweese and his wife, Pamela, because the trial court instructed on *res ipsa loquitur*.[1] Plaintiffs contend the appellate court reached its erroneous decision by weighing the evidence and substituting its judgment on contested factual matters for that of the jury. Upon certiorari previously granted, we reverse the decision of the Court of Appeals and reinstate and affirm the judgment of the trial court.

¶ 2 Donald Deweese was seriously injured on July 1, 2001, while he was working as an independent contractor providing bulldozing services to Patterson Drilling Company (Patterson) in a "rigging-up" operation. Patterson owned the drilling rig and its various components and had contracted with Lane Motor Freight Lines (Lane) to move all the components from an old drilling site to the new one. The move required that all the rig components be taken apart ("rigged down") at the old location, then loaded onto trucks and moved to the new location and reassembled ("rigged up"). Lane contracted with Eller Trucking (Eller) for the use of a tandem truck to move the rig and for the services of Mr. Eller as its operator.

¶ 3 The rigging-up procedure required moving two sets of rig substructures, each consisting of a bottom "pony" sub and an upper "top" sub, from the truck and stacking the top subs onto the pony subs. These substructures are massive iron pieces which must be strong enough to support the derrick and other rig components; they are approximately 47 feet long, 11 feet tall and weigh more than 50,000 pounds each. At the time of the accident, Mr. Deweese was the operator of the dozer and was assisting a forklift driver and the Eller truck driver in an effort to place a top sub onto a pony sub when the top sub toppled off the pony sub and fell onto the cab of the bulldozer, crushing the cab and severely injuring Mr. Deweese.

II.

¶ 4 The Deweeses brought suit in negligence for damages against the independent contractors, Lane and Eller, and also against Patterson, the drilling contractor and rig owner. The Deweeses settled with the independent contractors prior to trial. Proceeding to jury trial against Patterson alone, they presented evidence to show that Patterson had control of all activities at the work site;

---

1. The instruction reads: In addition to the rules which have been stated with respect to negligence, there are situations in which a jury may, but is not required to, find negligence from the mere fact that an accident occurred.

   Plaintiffs contend that this case involves such a situation, and consequently has the burden of proving each of the two following propositions: 1. That the injury was caused by the falling of the oil rig substructure which was under the exclusive control and management of the Defendant Patterson UTI; and 2. That the event causing the injury to Plaintiff was of a kind which ordinarily does not occur in the absence of negligence on the part of the persons in control of the instrumentality.

   If you find that each of these propositions is more probably true than not true, then you are permitted, but not required, to find that Patterson UTI was negligent. (OUJI 9.13)

owned, maintained and controlled all the rig components, including the top sub and the pony sub involved in the accident; and failed to adequately plan, supervise and manage the rigging-up procedure.

¶ 5 Their evidence, though controverted, included the following: (1) Patterson's toolpusher was the overall supervisor and had ultimate authority, the "final say," on all matters including safety; (2) on the day of the accident, the toolpusher was not present to supervise the operation even though stacking the subs was the most dangerous part of the rigging-up procedure; (3) Patterson's "relief" toolpusher on duty that day was unfamiliar with the rig, the location and the people involved, and was not present during the stacking effort; (4) Patterson did not include the rigging-up procedure in its safety manual and did not have a safety meeting regarding the process; and (5) though aware that the safest method to stack the subs was by using a crane, Patterson did not require or allow for the expense of a crane, accepting instead the lowest bid from rig movers.

¶ 6 Further: (6) Patterson had provided a location which was too small and cramped for the normal procedure of using two gin trucks to lift the top sub from the tandem truck with their winches; (7) the derrick had been assembled too close to the location, so there was not adequate space for the trucks to work, necessitating that smaller vehicles—the forklift and Mr. Deweese's dozer—were used instead; (8) the pony sub was an unsafe instrumentality because it did not have full-length channel iron guides which would have prevented the top sub from falling; and (9) the top runners of the pony sub should have been cleaned and lubricated. The last two points were offered to show that Patterson should have altered the pony sub by preparing and equipping it with full-length channel guides into which the bottom rails of the top sub could have been placed in order to safely slide the top sub into stable position. Testimony was presented to show this modification could have been accomplished easily and inexpensively and would have prevented the accident from happening.

¶ 7 Over defendant's objection, the trial court instructed the jury on *res ipsa loqui-* *tur*. The jury found in favor of the Deweeses and fixed their damages at $3,200,000. In light of the settlement previously reached between the Deweeses and Eller and Lane, the trial court granted Patterson a setoff in the amount of $1,000,000. Patterson appealed.

### III.

¶ 8 Based on its analysis of the evidence, the Court of Civil Appeals concluded that the *res ipsa loquitur* instruction was not warranted and reversed the matter for new trial. First, it found that plaintiffs failed to establish "who or what" had caused the accident; that while plaintiffs had presented evidence supporting several possible theories of fault, including a combination of negligence on the part of the independent contractors together with the defective condition of the pony sub, they never "pointed to one actor or precise act that caused the sub to fall" nor had they "decided on one cause of the accident." (Opinion, pp. 12–13.) Second, it found the evidence showed, as a matter of fact, that Patterson had no control over the equipment used in the process, stating that Patterson "did not have exclusive control over the instrumentality that caused the accident; in fact, it apparently had no control over any instrumentality involved in the accident;" further it viewed the evidence as showing that the independent contractor, Lane, was in control of the subs during their move and that Donald Deweese had "more control of the instrumentality than Patterson." (Opinion, pp. 13–14.)

¶ 9 That court's unpublished opinion expressly recognizes that there was evidence before the jury which showed that Patterson had responsibility for, and control over, the entire operation and that Patterson failed to use due care in conducting the operation. The court related that testimony was elicited to show plaintiff's injury may have been attributable in part to actions of other independent contractors, but that the accident "would not have happened if there had been full channel guides on the pony subs; if a crane had been used; 'if Patterson had had the foresight to perhaps clean and lubricate the top runners on the pony sub'; if the top

sub 'hadn't gone a little bit crooked and perhaps hit a guide and kicked up on the sub and then slid off'; or 'if perhaps the tool pusher for Patterson had been there and had a safety meeting before they started and said here's the way we need to put those subs together'." (Opinion, p. 9.)

## IV.

¶ 10 On certiorari, plaintiffs argue that *res ipsa loquitur* is applicable under the facts of this case and that the Court of Civil Appeals reached its erroneous conclusions by intruding into the exclusive province of the jury and substituting its own judgment on contested factual issues for that of the jury. They contend that in doing so the appellate court also disregarded established decisions of this Court governing proper application of *res ipsa loquitur.*

¶ 11 Plaintiffs argue first that the court erred in its requirement of proof of a single identifiable negligent act and actor which caused the injury, because the purpose of *res ipsa loquitur* is to allow a jury to infer negligence from an injurious occurrence without the aid of circumstances pointing to the responsible cause. *Jackson v. Oklahoma Memorial Hospital,* 1995 OK 112, 909 P.2d 765, 770. Additionally, they correctly point out that the Oklahoma Pleading Code does not require a plaintiff to choose between alternate fact versions in the pursuit of a claim. *Qualls v. U.S. Elevator Corp.,* 1993 OK 135, 863 P.2d 457, 463.

¶ 12 Plaintiffs point out that the record before the trial court is replete with competent evidence that Patterson did have exclusive control over the entire rigging-up operation and the rig components, including the one which proximately caused Donald Deweese's injury when it fell onto his bulldozer. They contend there was ample evidence before the jury from which it could conclude that Patterson had exclusive control over the instrumentality that caused the accident and that the accident arose from Patterson's want of due care.

¶ 13 In an appeal from a case tried by jury, an appellate court is not to weigh the evidence and determine which side produced evidence of greater weight. That job is reposed in the jury and the jury's verdict is conclusive as to all disputed facts and conflicting statements. *Johnson v. Ford Motor Co.* 2002 OK 24, 45 P.3d 86, 94; *Stroud v. Arthur Andersen & Co.,* 2001 OK 76, 37 P.3d 783, 787–788. "In an action of legal cognizance, the credibility of witnesses and the weight and value of their testimony are questions exclusively for the jury to pass upon, and where there is any competent evidence reasonably tending to support the verdict, such verdict and judgment pronounced thereon will be sustained." *Pine Island RV Resort, Inc. v. Resort Management, Inc.,* 1996 OK 83 922 P.2d 609, 613.

¶ 14 Plaintiffs next argue that the appellate court's finding that Patterson did not have exclusive control over the instrumentality that caused the accident invaded the province of the jury and conflicts with our authority governing *res ipsa loquitur.*

¶ 15 In *Qualls,* plaintiff was injured when the hospital elevator in which she was riding suddenly fell. She brought a negligence action against the hospital which owned the elevator and the company which had a contract to maintain it. The case against both defendants was submitted to the jury with an instruction on *res ipsa loquitur* given over the defendants' objections. Plaintiff prevailed against only the elevator company, which appealed. The Court of Civil Appeals reversed the trial court's judgment, finding that a *res ipsa loquitur* instruction was not warranted because plaintiff failed to prove the defendant elevator maintenance company had exclusive control of the hospital elevator when it fell and did not choose between alternate versions of asserted facts.

¶ 16 We granted certiorari and reversed the Court of Civil Appeals, finding that the fact that the elevator was owned by the hospital and used by its employees did not preclude finding that the elevator was within the maintenance company's exclusive control required for application of *res ipsa loquitur,* and that the plaintiff was not required to choose between alternative versions of facts. *Qualls* controls the instant case:

The doctrine of *res ipsa loquitur* is a pattern of proof which may be applied to an injury that does not occur in the usual course of everyday conduct unless a person who controls the instrumentality likely to produce injury fails to exercise due care to prevent its occurrence. With the aid of *res ipsa loquitur* negligence may be inferred from the harm without the aid of circumstances pointing to the responsible human cause. The fundamental element of this evidentiary process is the "control of the instrumentality" which caused the damage. Whether a case is fit for the application of *res ipsa loquitur* presents a question of law; it is a judicial function to determine if a certain set of circumstances permits a given inference. *Qualls v. U.S. Elevator Corp.*, 1993 OK 135, 863 P.2d 457, 460.

¶ 17 Addressing issues concerning evidence of the element of exclusive control sufficient to support a *res ipsa loquitur* instruction, including that the question is one for the trier of fact, we stated:

Whether a defendant at the critical point in contest had 'exclusive control' of an instrumentality in the *res ipsa loquitur* sense often constitutes a mixed question of law and fact. At the threshold the issue is one of law for the judge. It calls for the trial court to decide whether the evidence may lead reasonable persons to reach different conclusions. If the proof is not so overwhelmingly one-sided as to make the control element a matter of law, the question must go to the jury. Where there is *any* competent evidence to support the verdict, the judgment will be affirmed unless otherwise shown to be contrary to law. *Id.* at 461.

\* \* \*

Exclusive control, which is a flexible concept, ... does no more than eliminate, within reason, all explanations for the injurious event other than the defendant's negligence—i.e., it shows that defendant's negligence probably caused the accident. The required control element may be shifted and, under some circumstances, it may be shared. In short, control may rest in one who assumes responsibility for the fitness of an instrumentality for its intended use. *Id.* at 462.

¶ 18 Recognizing that our flexible interpretation of the exclusive control requirement is consistent with mainstream jurisprudence, we noted the Restatement (Second) of Torts § 328D requires only that other reasonably probable causes be sufficiently eliminated by the evidence, and Comment (g) to that section "explains that '[e]xclusive control is merely one fact which establishes the responsibility of the defendant; and if it can be established otherwise, exclusive control is not essential to a *res ipsa loquitur* case.'" *Id.* note 20 at 462.

¶ 19 In *Harder v. F.C. Clinton, Inc.* 1997 OK 137, 948 P.2d 298, we followed *Qualls* in recognizing that "whether the control element is satisfied presents a question for the trier of fact." *Id.* note 37 at 306. And we stated that it becomes the jury's function, not the trial court's to weigh conflicting evidence and "ultimately to choose whether the inference of the defendant's negligence is to be preferred over other competing inferences...." *Id.* note 19 at 304. We further explained:

The effect of the *res ipsa loquitur* evidentiary rule is merely to raise a rebuttable inference which allows a plaintiff to take the case to the jury and thus avoid a directed verdict for the defendant. Where the *proof is conflicting or subject to different inferences*, some of which are in favor of and others against the applicability of *res ipsa loquitur*, the question must be left to the jury. *Id.* at 303–304.

¶ 20 For these reasons, the trial court did not err by instructing the jury on *res ipsa loquitur*. The jury's verdict is supported by competent evidence, the opinion of the Court of Civil Appeals is VACATED, and the judgment of the trial court is REINSTATED and AFFIRMED.

¶ 21 EDMONDSON, C.J., OPALA, KAUGER, WATT, COLBERT, JJ., Concur.

¶ 22 TAYLOR, V.C.J., HARGRAVE, WINCHESTER, REIF, JJ., Dissent.

REIF, J., dissenting:

¶ 1 I respectfully dissent.

¶ 2 As the record discloses, the assembly of the oil rig at the well site in question was an activity that required special skill, expertise and heightened care by *all* of those involved in the activity. It was obvious from the size and weight of the components being moved and assembled that there was great danger and imminent risk of injury if the equipment or techniques employed were inadequate, or were not properly directed and coordinated. Given the driller's complete control of the place where the rig was to be assembled, as well as the employment of contractors to perform the dangerous work at the well site, the duty to safely move and assemble the rig at the well site remained the nondelegable duty of the driller independent of the activity of the parties actually moving and assembling the equipment.

¶ 3 A nondelegable duty means that an employer of an independent contractor, by assigning work consequent to a duty, is not relieved from liability arising from the delegated duties negligently performed. *Kime v. Hobbs,* 252 Neb. 407, 562 N.W.2d 705, 713–14 (1997). One such nondelegable duty is the duty of care imposed on an employer of an independent contractor when the contractor's work involves special risks or dangers, including work that is inherently dangerous in the absence of special precautions. *Id.* at 417, 562 N.W.2d 705. A special or peculiar risk is one the "differ[s] from the common risks to which persons in general are commonly subjected by ordinary forms of negligence which are usual to the community [and] involve[s] some special hazard resulting from the nature of the work being done, which calls for special precautions." *Id.* This Court has said the issue of whether a duty is nondelegable is a question of law. *Bouziden v. Alfalfa Electric Cooperative, Inc.,* 2000 OK 50, 16 P.3d 450.

¶ 4 I would hold that the driller's liability for the injury in question turns on nondelegable duty and not whether the driller exercised "exclusive control" over the components, equipment or personnel moving them. In short, this is not a proper case of *res ipsa loquitur,* but of vicarious liability based on a nondelegable duty.