**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 5 1997**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

STERLING WHEELER,

     Plaintiff - Appellee,

v.

KOCH GATHERING SYSTEMS, INC.,

     Defendant - Cross-Claimant -
Appellant,

FARRAR CONSTRUCTION
INCORPORATED, an Oklahoma
Corporation,

     Defendant - Cross-Defendant.

No. 96-6289

---

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. CIV-94-897-M)**

---

O. Clifton Gooding (Joel C. Hall with him on the brief) of Gooding Muliniz &
Hardin, P.C., Oklahoma City, Oklahoma, for Plaintiff-Appellee.

Robert D. Looney, Jr. of Looney, Nichols & Johnson, Oklahoma City, Oklahoma,
for Defendant-Appellant.

---

Before **BRORBY, McWILLIAMS** and **KELLY**, Circuit Judges.

---

**BRORBY**, Circuit Judge.

     The central issue in this negligence diversity action is whether the doctrine

of *res ipsa loquitur* under Oklahoma law applies. Koch Gathering Systems, Inc. ("Koch"), the defendant-appellant, appeals from an adverse jury verdict and judgment denying Koch's Motion for Judgment as a Matter of Law and Motion for a New Trial. Koch's principal contention is the district court erred as a matter of law by submitting the case to the jury with a *res ipsa loquitur* instruction. This court exercises jurisdiction pursuant to 28 U.S.C. § 1291. We reverse.

## BACKGROUND

On the afternoon of June 29, 1993, as Mr. Sterling Wheeler was cutting wheat with his combine on a field located in Logan County, Oklahoma, for Mr. Nolan Sheihing, a farmer, the right front tire of his combine became stuck. Mr. Scheihing pulled the combine backwards out of the soil using a tractor. Mr. Wheeler then drove his combine forward back into the "hole" where it became stuck again. The combine was pulled out a second time. As a result of these events, Mr. Wheeler's combine was damaged.

Mr. Wheeler's accident occurred partly over a pipeline right of way owned by Koch. Within the right of way, Koch owned and maintained a three-inch pipeline constructed by Farrar Construction, Inc. ("Farrar") in 1991. The refilled pipeline trench was between four to five feet deep and thirty inches wide.

Koch was obligated under its right of way agreement with the owners of Mr. Scheihing's leased field to "bury all pipe to a sufficient depth so as not to interfere with ordinary cultivation of soil." In addition, Koch was granted the right of way for the purposes of "maintaining, inspecting [and] repairing" the pipeline. Since 1991, Koch has inspected the pipeline trench by aerial patrol every seven to ten days. In 1991, Koch and Farrar entered into an Intermittent Services Agreement which specified duties owed by Farrar to Koch during and after the construction of the pipeline.

Mr. Wheeler brought a negligence action against Koch and Farrar for damages to his combine and for future lost profits, in the United States District Court For the Western District of Oklahoma. Mr. Wheeler claimed the ground over the pipeline collapsed causing his combine to go into the hole. Koch and Farrar contended it was a coincidence Mr. Wheeler's combine became stuck in mud near the pipeline, and Mr. Wheeler damaged his combine by purposefully driving the combine into the mud a second time.

At trial, Mr. Wheeler testified the field where the accident occurred looked normal. Mr. Wheeler stated he had no problems in the field, including over the pipeline, other than the spot where his combine became stuck on the day of his

accident. He claimed his combine was most likely damaged by running his combine into the soil the first time. Mr. Sheihing testified the manner in which his combine became stuck with one tire in the soil was unusual.

Several witnesses testified Logan County experienced heavy rainfall during the spring of 1993 causing flooding and muddy conditions in nearby properties and in the southern part of Mr. Scheihing's property. During this time, it was not unusual to hear reports of combines getting stuck in mud in the surrounding area. Mr. Leo Rother, a farmer in Logan County, testified one of Mr. Wheeler's combines became stuck in the mud in his field located three to four miles from Mr. Sheihing's field near the time of Mr. Wheeler's accident. Mr. Wheeler testified the distance was six or seven miles from Mr. Sheihing's field.

Mr. Scheihing testified he crossed the property over Koch's pipeline many times with heavy equipment without incident prior to and after Mr. Wheeler's accident. In the fall of 1992, 1993, and 1994, he plowed the soil over the pipeline using a heavy tractor with a disk and chisel disturbing the soil at a depth of six to eight inches.

Mr. Sheihing testified Mr. Wheeler's combine tire sank two to three feet in the soil. Mr. Wheeler testified his combine tire sank four to four and one-half feet. The rut or scar in the soil created by Mr. Wheeler's tire was roughly three to four feet wide. The ground in the tire rut was muddy. The combine tire was muddy when pulled out.

Mr. Scheihing testified there was no wash-out, cavern or collapse of Koch's pipeline trench underneath or near Mr. Wheeler's combine. The ground outside and within the trench was affected identically by Mr. Wheeler's tire.

After the evidence was heard, the court instructed the jury on the doctrine of *res ipsa loquitur* and negligence. The jury awarded Mr. Wheeler $48,000 in damages after finding Mr. Wheeler 50% negligent, Koch 50% negligent, and Farrar 0% negligent. Koch filed a Motion for Judgment as a Matter of Law or, in the alternative, a Motion for New Trial.

In its motions, Koch contended (1) the uncontradicted evidence established the doctrine of *res ipsa loquitur* did not apply; (2) no evidence was presented which the jury could find Koch negligent; and (3) the uncontradicted evidence established Mr. Wheeler was a licensee on Koch's right of way and therefore

Koch breached no duty to Mr. Wheeler. Koch claimed the doctrine of *res ipsa loquitur* did not apply because Mr. Wheeler failed to present sufficient evidence: (1) the pipeline trench was under Koch's exclusive control; (2) the accident was of a kind that did not ordinarily occur in the absence of negligence; and because (3) the evidence conclusively established Mr. Wheeler caused and contributed to his accident.

The district court denied Koch's motions for several reasons. First, relying on *Qualls v. United States Elevator Corp.*, 863 P.2d 457 (Okla. 1993),[1] the court determined Koch had exclusive control of the pipeline and trench at the time of Mr. Wheeler's accident as the result of Koch's obligations to maintain the pipeline trench under its right of way agreement, and obligations under the Intermittent

---

[1] In *Qualls*, the Oklahoma Supreme Court ruled an elevator company's maintenance contract for an elevator causing Ms. Qualls' injury gave the elevator company "exclusive control" for purposes of the *res ipsa loquitur* doctrine. Id. at 462-63. Specifically, the court stated "control may rest in one who assumes responsibility for the fitness of an instrumentality for its intended use." *Id*. at 462.

Services Agreement.[2]  Second, the court concluded evidence[3] that Mr. Wheeler

presented sufficiently proved the accident was not of a type that ordinarily occurs

absent negligence.  *Id.*  Third, the court decided the fact Mr. Wheeler may have

contributed to his injury did not bar a *res ipsa loquitur* instruction.  *Id.*  The court

reasoned the jury may have found "Koch's negligence was the sole cause of this

initial collapse" and "[Mr.] Wheeler was negligent for driving his combine

through the hole the second time."  Lastly, the court concluded despite no direct

evidence of Koch's negligence, the jury may have inferred negligence on Koch's

part.  In addition, in concluding the jury could have inferred negligence, the court

relied on *Shell Pipe Line Corp. v. Freeman*, 62 P.2d 1177 (Okla. 1936), where the

Oklahoma Supreme Court held negligence could properly be inferred when the

soil in a pipeline trench erodes more readily than the adjoining soil.  The court

rejected Koch's claim the jury should have been instructed of Mr. Wheeler's status

as a licensee because Koch failed to timely request the instruction and the court

---

[2]  The district court construed Farrar's duties owed to Koch in the Intermittent Services Agreement to protect the property and persons of others "from loss, damage or injury of any type" and "not to interfere with the operations of others on the premises," as expressing Koch's duties owed to third persons.

[3]  The district court relied on Mr. Wheeler's evidence indicating the field had no abnormal appearance; no portion of the field collapsed prior to the accident; the soil only collapsed where the pipeline was buried; and the collapse was not attributable to Mr. Wheeler's acts.

construed Koch's right of way agreement and the Intermittent Services Agreement as providing specific duties Koch owed to Mr. Wheeler.

On appeal, Koch makes essentially the same arguments made to the district court. Koch claims the court erred by: (1) instructing the jury on the doctrine of *res ipsa loquitur*; (2) failing to include in its *res ipsa loquitur* instruction the element the accident was not due to any action or contribution by the plaintiff and using words in its instruction contrary to the evidence presented; (3) denying judgment as a matter of law to Koch based on the theory *res ipsa loquitur* does not apply and no independent evidence of negligence was presented; and (4) failing to instruct the jury Mr. Wheeler is a licensee, and the duties owed by Koch to a licensee. Because we dispose of this appeal on the first and third issues, we do not address the remaining issues.

## *RES IPSA LOQUITUR*

Koch contends the district court erred in allowing a *res ipsa loquitur* instruction go to the jury because: (1) Koch did not have exclusive control of the pipeline trench; (2) the accident was not of a kind which does not ordinarily occur absent negligence; and (3) Mr. Wheeler contributed to his injury. "In a diversity case, the substance of a jury instruction is a matter of state law, but the grant or

denial of a tendered instruction is governed by federal law." *Wolfgang v. Mid-America Motorsports, Inc.*, 111 F.3d 1515, 1525 (10th Cir. 1997). We review de novo whether the jury was properly instructed on the *res ipsa loquitur* doctrine under Oklahoma law. *Id.* at 1526 ("The ultimate question of whether the jury was properly instructed is a question of law we review de novo."); *Qualls*, 863 P.2d at 460 ("Whether a case is fit for the application of *res ipsa loquitur* presents a question of law; it is a judicial function to determine if a certain set of circumstances permits a given inference."). We review the district court's decision to give a particular jury instruction for abuse of discretion. *Wolfgang*, 111 F.3d at 1525. "In assessing whether the court properly exercised that discretion, we must examine the instructions as a whole to determine whether they sufficiently cover the issues, facts and evidence in the case." *Id.* at 1526.

Under Oklahoma law, the doctrine of *res ipsa loquitur* "is a pattern of proof which may be applied to an injury that does not occur in the usual course of everyday conduct unless a person who controls the instrumentality likely to produce injury fails to exercise due care to prevent its occurrence." *Qualls*, 863 P.2d at 460. The doctrine "permits a plaintiff to make a prima facie case of negligence by allowing the trier of facts to infer negligence, from facts established by competent evidence, on the theory that the injury complained of

would not have occurred in the absence of negligence on the part of the defendant." *Avard v. Leming*, 889 P.2d 262, 264 (Okla. 1994) (citing *St. John's Hosp. & Sch. of Nursing, Inc. v. Chapman*, 434 P.2d 160, 166 (Okla. 1967)). *Res ipsa loquitur* allows negligence to be inferred without the aid of circumstances pointing to the responsible cause. *Qualls*, 863 P.2d at 460.

To permit the jury to infer negligence using a *res ipsa loquitur* jury instruction, the plaintiff must first sufficiently prove certain foundational facts to the court. *Federal Ins. Co. v. United States*, 538 F.2d 300, 301-02 (10th Cir. 1976) (applying Oklahoma law). Namely, the plaintiff must prove: (1) the defendant had exclusive control of the instrumentality causing the plaintiff's injury; and (2) the injury is of a kind which ordinarily does not occur absent negligence.[4] *Qualls*, 863 P.2d at 460; *Avard*, 889 P.2d at 264. In addition, the court considers whether evidence of the explanation of the accident is more

---

[4] Koch also contends the trial court erred in failing to include in its jury instruction a third element traditionally associated with the *res ipsa loquitur* doctrine, the plaintiff cannot have caused or contributed to his injury. Recent Oklahoma cases and the Oklahoma Uniform Jury Instructions 9.13 do not discuss this element, although prior Oklahoma case law recognized it. *Compare Collins v. N-Ren Corp.*, 604 F.2d 659, 661 (10th Cir. 1979) (applying Oklahoma law); OUJI-CIV 2d. 9.13 (Rev. 6/96), *with Qualls*, 863 P.2d at 460, and *Jackson v. Oklahoma Memorial Hosp.*, 909 P.2d 765, 770, n.17 (Okla. 1995). We express no view. Because we dispose of Koch's appeal on other grounds, we need not decide this issue.

accessible to the defendant than to the plaintiff. *Jackson*, 909 P.2d at 770 n.17.

The court then determines whether the evidence is sufficient to permit an

inference of negligence before submitting the case to the jury with a *res ipsa*

*loquitur* instruction. *Avard*, 889 P.2d at 264.

Koch claims Mr. Wheeler did not establish a prima facie case of negligence

under the *res ipsa loquitur* doctrine because Mr. Wheeler failed to prove Koch

had exclusive control of the pipeline trench and Mr. Wheeler's accident was so

unusual at the time, it could only have occurred if Koch was negligent. We agree.

### (a) Exclusive Control

Although we recognize under Oklahoma law, "[e]xclusive control ... is a

flexible concept," *Qualls*, 863 P.2d at 462, we would stretch the concept too far

by concluding Koch had exclusive control. The purpose of the exclusive control

requirement is provide a rational basis for concluding the "defendant's negligence

probably caused the accident." *Id.* The requirement "does no more than

eliminate, within reason, all explanations for the injurious event other than the

defendant's negligence." *Id*. Under Oklahoma law,

> [w]hether a defendant at the critical point in contest had "exclusive
> control" of an instrumentality in the *res ipsa loquitur* sense often
> constitutes a mixed question of law and fact. At the threshold the
> issue is one of law for the judge. It calls for the trial court to decide

whether the evidence may lead reasonable persons to reach different conclusions. If the proof is not so overwhelmingly one-sided as to make the control element a matter of law, the question must go to the jury. Where there is any competent evidence to support the verdict, the judgment will be affirmed unless otherwise shown to be contrary to the law.

*Id*. at 461 (citations omitted).

In this case, we find the evidence sufficiently one-sided to rule as a matter of law Koch did not have exclusive control of the instrumentality[5] causing Mr. Wheeler's injury. The soil in Koch's pipeline trench was not under its exclusive control because for twenty months the soil was subject to disturbance outside of Koch's control by Mr. Scheihing's farming equipment, natural conditions, such as heavy rainfall, and Mr. Wheeler's combine on the day of the accident. Thus, Mr. Wheeler has not sufficiently eliminated, within reason, other probable causes of

---

[5] Mr. Wheeler contends the instrumentality causing his harm was the pipeline and pipeline trench. Logically, Mr. Wheeler must mean the soil in and over the pipeline trench since the pipeline itself did not cause the combine's damage, nor do the facts indicate the trench itself as opposed to the soil in and over the trench, was the cause of Mr. Wheeler's accident. The facts in the record indicate the trench did not collapse and the soil within the trench and outside the trench were equally affected. We disagree with Mr. Wheeler's assertion the instrumentality responsible for his harm was the pipeline and trench. Consequently, we analyze Mr. Wheeler's claim regarding the soil in and over Koch's trench as the instrumentality Mr. Wheeler claims caused his injury.

-12-

his accident than Koch's negligence for us to conclude an Oklahoma court would consider a *res ipsa loquitur* instruction proper.

Control is not exclusive for purposes of the *res ipsa loquitur* doctrine where the proof does not reasonably eliminate the activities of a third party or condition having access to the instrumentality, which could alternatively be a probable cause of the plaintiff's accident. *Avard*, 889 P.2d at 265 (finding no exclusive control of a sliver of glass on living room floor because the owners of the home were not aware the glass was present and glass was located in high traffic area); *Seay v. General Elevator Co.*, 522 P.2d 1022, 1027 (Okla. 1974) (holding elevator maintenance company did not have exclusive control over elevator doors since plaintiff and others operated them and plaintiff knew she could have placed hand in doorway to stop doors from closing); *Michel v. Branham*, 327 P.2d 440, 443 (Okla. 1958) (finding no exclusive control where plaintiff failed to show soda bottle injuring her was in the same condition as when it left defendant's hands); *Marathon Oil Co. v. Sterner*, 632 S.W.2d 571 (Tex. 1982) (finding no exclusive control of a gas tank which allegedly leaked gas causing plaintiff's's injury since tank was cleaned and repaired by plaintiff's employer even though defendant had a duty to maintain the tank). Logically, the greater interference with an instrumentality by other people or conditions outside

-13-

the defendant's control, the greater probability the plaintiff's accident can be explained by other reasons than the defendant's negligence. *See* W. Page Keaton et al., Prosser & Keaton on the Law of Torts, § 39, at 248-49 (5th ed. 1984).

Applying this reasoning, we are unable to conclude an Oklahoma court would find Koch had exclusive control of the soil over and in its pipeline trench. Too many other disturbances to the soil that could have been equal as probable explanations for Mr. Wheeler's accident may have deprived Koch of exclusive control. For example, we find it compelling Mr. Scheihing had crossed the pipeline trench with heavy equipment on many occasions for twenty months prior to Mr. Wheeler's accident. Mr. Wheeler had even crossed the pipeline trench several times with his combine prior to and on the day of his accident. We also find significant, combines in the area were getting stuck in the mud due to the heavy rainfall during the period of Mr. Wheeler's accident. The ground was muddy underneath the tire. Mr. Wheeler admitted although top soil may look dry, subsoil can be muddy. Also important to our conclusion is the ground over the pipeline trench did not wash out or collapse. For these reasons, without explanation by Mr. Wheeler, we cannot conclude Koch had exclusive control of the soil in and over its pipeline trench such that the more probable reason for Mr. Wheeler's accident was negligence on Koch's part.

We disagree with the district court's reliance on *Qualls* in concluding Koch had exclusive control through its obligations to maintain its pipeline easement. In *Qualls*, Ms. Qualls was injured when the elevator she was riding descended abruptly. *Qualls*, 863 P.2d at 458. She brought a negligence action against the elevator maintenance company which undertook maintenance and service duties on the elevator, and the hospital where the elevator was located. *Id.* at 458-59. After being instructed on *res ipsa loquitur*, the jury awarded Ms. Qualls damages against the elevator maintenance company. *Id.* at 459.

The elevator maintenance company appealed the jury verdict, contending Ms. Qualls failed to prove exclusive control. *Id.* The Oklahoma Court of Appeals agreed and reversed. *Id.* However, the Oklahoma Supreme Court reversed holding, "control may rest in one who assumes responsibility for the fitness of an instrumentality for its intended use." *Id*. at 462. Therefore, the court found the elevator maintenance company's assumption of responsibility to maintain the elevator sufficient to give to the jury the question of whether the company had exclusive control. *Id.* at 463.

In its reasoning, the court recognized that among the earliest negligence plaintiffs using *res ipsa loquitur* were passengers injured in public transportation

conveyances in which the appliance they were riding "remained under the defendant's management, in a course of unexplained events that, according to human experience, do not ordinarily happen if due care is exercised." *Id*. at 460. Furthermore, the court noted an automatic elevator's sudden descent may raise a rebuttable inference of negligence under the *res ipsa loquitur* instruction if the occurrence was due to a mechanism's failure which would not ordinarily happen if due care was exercised. *Id*. The court recognized "[e]levator mechanisms are hidden from view, and since they consist of mechanical, electrical, and sophisticated electronic systems, they are at any rate not easily capable of manifesting a defect." *Id*.

We find *Qualls* distinguishable from the present case for several reasons. First, unlike the elevator in *Qualls*, the instrumentality in this case is soil in and over a pipeline trench plainly subject to inteference by forces outside of Koch's control. In comparison to *Qualls*, where the elevator machinery was hidden from view of others, soil in and over a pipeline trench in a wheat field is affected by natural conditions such as heavy rainfall, animals, or large tractors and equipment. For example, Mr. Sheihing crossed the soil on many occasions and at times plowed the soil at a depth of six to eight inches over the pipeline prior to Mr. Wheeler's accident. The distinct difference between elevator machinery

hidden from view of passengers or others, and soil in a pipeline trench outside subject to interference by others and natural conditions distinguishes *Qualls* from this case.

Second, although Koch undertook responsibilities to maintain the pipeline trench in its right of way agreement, the maintenance agreement alone does not give Koch exclusive control. In *Qualls*, the court found the daily use by passengers and the hospital staff's duty to report any malfunction did not divest the elevator exclusive control under its maintenance contract as a matter of law. *Qualls*, 863 P.2d at 461. The court suggested the passengers and hospital staff were completely dependent on the elevator company for the elevator's safe operation because from the location of the elevator machinery, they could not have discovered any defects. *Id.* at 463. In comparison to *Qualls*, although Koch had an obligation to maintain the soil in the pipeline trench, too many other disturbances to the soil could divest Koch of exclusive control, such as Mr. Scheihing's equipment, Mr. Wheeler's combine and natural conditions. For these reasons, we conclude Mr. Wheeler failed to prove Koch had exclusive control as a matter of law.

## (b) Occurrence Absent Negligence

Mr. Wheeler also failed to establish his injury was of a type which ordinarily does not occur absent negligence. Another essential element the plaintiff must establish to invoke the doctrine of *res ipsa loquitur* is the incident was such an unusual occurrence, it is without explanation except the defendant must have been negligent. *Avard*, 889 P.2d at 266. Oklahoma law recognizes "*res ipsa loquitur* cannot be applied 'where, after proof of the occurrence, without more, the matter still rests on conjecture, or is reasonably attributable to some cause other than negligence.'" *Id.* (quoting *National Union Fire Ins. Co. v. Elliott*, 298 P.2d 448, 451 (Okla. 1956)). "[T]he fact that an accident has occurred under mysterious or unexplained circumstances provide[s] no basis for applying res ipsa loquitur." *Id*. at 265 (citing *Elliott*, 298 P.2d at 451.)

At trial, several witnesses testified combines in the surrounding area became stuck in fields during the period of Mr. Wheeler's accident. Even one of Mr. Wheeler's combines became stuck in a field located three to four miles from where Mr. Wheeler's accident occurred a few days prior to his accident. These facts conflict with a finding Mr. Wheeler's accident was unusual.

Although Mr. Sheihing testified the manner in which Mr. Wheeler's combine sat with one wheel stuck was unusual, the testimony did not establish it was so unusual, without explanation, that the only reasonable conclusion was the accident occurred due to Koch's negligence. *Compare Furr v. McGrath*, 340 P.2d 243, 250-51 (Okla. 1959) (finding plaintiff established car jack could not have disengaged absent defendant's negligence sufficient for permitting a *res ipsa loquitur* instruction), *with Avard*, 889 P.2d at 266 (concluding *res ipsa loquitur* instruction not proper no evidence offered to find sliver of glass could have only come in defendant's living room through their negligence) and *Cosden*, 211 P.2d at 529 (denying *res ipsa loquitur* instruction because evidence was insufficient to find accident would not have occurred absent defendant's negligence). Evidence indicated the soil over Koch's pipeline trench and outside of the trench was equally affected by Mr. Wheeler's tire. No evidence indicated the accident was caused by a wash-out or collapse of the Koch's pipeline trench. Due to rainfall and muddy conditions, combines in the area were getting stuck during the period of Mr. Wheeler's accident. Based on these facts, we conclude Mr. Wheeler's accident does not appear so unusual that it only be attributable to negligence on Koch's part. The two central foundation facts of *res ipsa loquitur* were not satisfied under Oklahoma law. Therefore, we conclude the district court abused its discretion in permitting a *res ipsa loquitur* instruction. We now review Koch's

-19-

claim it is entitled to judgment as a matter of law since no independent evidence of negligence was offered and *res ipsa loquitur* does not apply.

## NEGLIGENCE

Koch contends the district court erred in denying its motion for judgment as a matter of law. We review a district court's denial of a motion for judgment as a matter of law de novo applying the same standard as the district court. *Mason v. Oklahoma Turnpike Auth.*, 115 F.3d 1442, 1450 (10th Cir. 1997). Viewing the evidence in light most favorable to the non-moving party, we may only overturn the denial if the "evidence points but one way, and is susceptible to no reasonable inferences supporting the party opposing the motion." *Id.* As a diversity case, Oklahoma law governs the analysis of Koch's underlying claims, but federal law controls the procedural question whether judgment as a matter of law is appropriate. *Wolfgang*, 111 F.3d at 1522.

Koch contends it is entitled to judgment as a matter of law because no independent evidence of Koch's negligence was presented and the doctrine of *res ipsa loquitur* does not apply. We agree. Construing the evidence in light most favorable to Mr. Wheeler, we conclude Koch is entitled to judgment as a matter

-20-

of law because *res ipsa loquitur* cannot apply and no independent evidence of negligence was offered to establish negligence on Koch's part.[6]

"'[I]n a res ipsa case the ultimate fact, [s]ome kind of negligence is inferred without any evidential facts except the unusual occurrence itself; [w]hile in a specific negligence case there must be evidential facts sufficient to show some negligent acts or omissions which were the proximate cause of the occurrence.'" *Flick v. Crouch*, 555 P.2d 1274, 1277 (Okla. 1976) (quoting *Harke v. Haase*, 75 S.W.2d 1001, 1110 (Mo. 1934)). No evidence was presented indicating Koch was negligent. The evidence presented at trial indicated the soil over Koch's pipeline trench did not wash-out or collapse. In addition, the evidence showed the soil in and over the pipeline trench and outside of the pipeline trench was equally affected by Mr. Wheeler's combine tire. "[A] prima facie case for negligence is made where the circumstances are such as to remove the case from the realm of conjecture and place it within the sphere of legitimate and rational inference." *Delbrel v. Doenges Bros. Ford, Inc.*, 913 P.2d 1318, 1320 (Okla. 1996). From the facts in this case, we cannot conclude the case is removed from conjecture.

---

[6] Under Oklahoma law, three evidentiary elements are essential to a prima facie case of negligence: (1) a duty owed by the defendant to protect the plaintiff from injury; (2) a failure properly to exercise or perform that duty; and (3) the plaintiff's injuries proximately caused by the defendant's breach. *Jackson v. Jones*, 907 P.2d 1067, 1071-72 (Okla. 1995).

To explain other grounds the jury could have used to infer Koch negligent, the district court relied on *Shell Pipe Line Corp. v. Freeman*, 62 P.2d 1177 (Okla. 1936), a case where the Oklahoma Supreme Court held negligence could be inferred when the soil in a pipeline trench eroded more readily than the adjoining soil. However, the district court's reliance on this case is misplaced because the evidence showed the soil in Koch's pipeline trench was equally affected as the adjoining soil from Mr. Wheeler's combine. The facts do not indicate the soil in the Koch's pipeline trench eroded more readily than the adjoining soil. We therefore conclude the trial court erred in permitting the jury to infer negligence. Consequently, without the *res ipsa loquitur* doctrine applying in this case and without any independent evidence of negligence on Koch's part, and viewing the evidence in light most favorable to Mr. Wheeler, we conclude there is no evidentiary basis for a reasonable jury to find Koch was negligent. Therefore Koch is entitled to judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, we **REVERSE** and **REMAND** to enter judgment for Koch as a matter of law.