**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 29 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**

---

CLARENCE T. THOMPSON and
ANNA R. THOMPSON,

> Plaintiffs-Appellees,

v.

UNITED STATES OF AMERICA,

> Defendant-Appellant.

No. 98-5187

---

Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 95-CV-1112-K)

---

Robert W. Metzler, Attorney, Tax Division, Department of Justice, Washington
D.C. (David I Pincus, Attorney, Tax Division, Department of Justice, Washington,
D.C.; and Stephen C. Lewis, United States Attorney, Tulsa, Oklahoma, Of
Counsel, with him on the briefs), for Defendant-Appellant.

George W. Owens (Randall E. Rose with him on the brief) of The Owens Law
Firm, P.C., Tulsa, Oklahoma, for Plaintiffs-Appellees.

---

Before **SEYMOUR**, Chief Judge, **HOLLOWAY**, and **TACHA**, Circuit Judges.

---

**SEYMOUR**, Chief Judge.

The United States appeals from a jury determination that the tax penalties and increased interest rate provided for in 26 U.S.C. §§ 6653, 6659, and 6621 were inapplicable to the disallowed deductions of taxpayers Clarence and Anna Thompson. We affirm in part and reverse in part.

## I

Dr. Thompson is a surgeon who practiced medicine during the 1980s through Surgical Associates, a medical group located in Tulsa, Oklahoma. This litigation arose out of Dr. Thompson's[1] $50,000 investment in Davenport Recycling Associates (Davenport), a limited partnership purportedly engaged in the plastics recycling industry.

In 1982 during a meeting at Surgical Associates, Billy Stewart, Surgical Associates' accountant, mentioned an investment opportunity in Davenport, a venture that was attempting to manufacture machines to recycle plastic scrap into usable plastic pellets (recyclers). Upon Dr. Thompson's further inquiry, Mr. Stewart provided a one hundred-page offering memorandum on Davenport describing the business and tax risks involved in the partnership, forty pages of which gave a favorable opinion from recognized experts as to the legal, business,

___

[1] Anna Thompson is a party to this case because she filed a joint return with Dr. Thompson for the year at issue.

marketing, and scientific aspects of Davenport. Mr. Stewart reported that he had visited Davenport's factory in Massachusetts, had seen a recycler in production and the resulting pellets, and had requested and received information regarding locations and markets for the recyclers. Mr. Stewart informed Dr. Thompson that he and his wife had invested in Davenport. After further discussing the venture with some of his patients employed in the petroleum industry, Dr. Thompson invested $50,000 in Davenport in December 1982.

Dr. Thompson received Davenport's Schedule K-1 listing the allowable tax credits and deductions flowing through Davenport to him for 1982. Dr. Thompson forwarded the schedule and Davenport's offering memorandum to Ed Briscoe, his personal accountant, who prepared the Thompsons' joint return. Pursuant to the schedule, the Thompsons claimed $77,000 in tax credits and $39,231 in tax deductions on their 1982 return. As a result of their initial $50,000 investment, the Thompsons' overall tax liability was reduced by $93,094 for that year.

Davenport's sole general partner and tax matters partner was Samuel Winer. Unbeknownst to the Thompsons, the Internal Revenue Service (IRS) began investigating Mr. Winer in 1984 for creating abusive tax shelters, which had allegedly caused the government to lose $19,000,000 in revenue for the 1982 tax year alone. In 1986, a permanent injunction was entered against Mr. Winer

preventing him from selling partnership interests and removing him as tax matters partner from all partnerships. The IRS also began an audit of Davenport. Meanwhile, the IRS inexplicably reinstated Mr. Winer as tax matters partner for the Davenport venture "for the purpose of providing administrative service."[2] Aple. Supp. App. at 37. He thereafter consented numerous times to the IRS's requests to extend the period of time for which it could assess taxes against the partnership. In 1994, Mr. Winer conceded that Davenport lacked economic substance, was not entered into for profit, and was thus a sham. He consented to a disallowance of the previous deductions and credits claimed by Davenport and a resulting assessment of taxes, penalties, and interest owed by all limited partners, including Dr. Thompson.[3] *See Davenport Recycling Assocs. v. Commissioner*, 76 T.C.M. (CCH) 562 (1998) (discussing history of Davenport litigation).

---

[2]During this entire period, the limited investors in Davenport were not informed of the proceedings against Mr. Winer or the reasons for his removal and later reinstatement as tax matters partner for Davenport. In 1989, Davenport investors were told that the IRS had audited the venture. When Mr. Thompson attempted to contact the Service regarding this audit and how it might affect him, the Service responded that it could not work with individual investors while Mr. Winer was representing their interests.

[3]Because of the multiple extensions Mr. Winer consented to, the IRS was able to assess liability against the Davenport investors going back to 1982. The interest on tax underpayments accrues from the date when the underpayment first occurred. Since the deductions and credits were not disallowed until 1994, the interest on the underpayment was calculated back to 1982 resulting in twelve years of accrued interest. The actions Mr. Winer took after his reinstatement as tax matters partner by the IRS were so contrary to the interests of the investors as to raise suspicion regarding his intentions and his relationship to the IRS.

As a result, twelve years after their investment in Davenport, the Thompsons were informed that the deductions and credits claimed on their 1982 return were disallowed. In addition to the $93,094 underpayment from that year, the Thompsons were assessed $277,044 in interest, a $104,199 penalty under 26 U.S.C. § 6653(a) due to their alleged negligent violation of IRS rules and regulations, a $23,100 penalty under 26 U.S.C. § 6659[4] because the underpayment was attributable to a valuation overstatement, and increased interest at the rate of 120% of the applicable rate under 26 U.S.C. § 6621(c)[5] because the underpayment was attributable to a tax-motivated transaction, resulting in an additional interest payment of $61,883. Thus, the Thompsons' initial tax reduction of $93,094 resulted in a total liability of $559,320.[6]

After paying this full amount, the Thompsons timely filed an administrative claim for a refund. The IRS denied their claim and the Thompsons filed the

_____

[4]Section 6659 was repealed in 1989. *See* Pub. L. No. 101-239, 103 Stat. 2399 (1989).

[5]This subsection was originally designated as section 6621(d) when added to the Tax Code in 1984. *See* Pub. L. No. 98-369, 98 Stat. 682 (1984) (effective on interest accruing after Dec. 31, 1984). It was redesignated as section 6621(c) in 1986, *see* Pub. L. No. 99-514, 100 Stat. 2744, 2750 (1986), and was repealed in 1989, *see* Pub. L. No. 101-239, 103 Stat. 2399 (1989). For simplicity, we refer to this subsection as section 6621(c).

[6]The Thompsons also claimed flow-through tax credits and deductions from the Davenport investment in 1984 and 1985 of significantly smaller amounts, for which the IRS imposed a tax liability of $460 and $971, respectively. The Thompsons do not challenge these assessments.

present suit challenging the IRS's assessed penalties and increased interest. Prior to trial, the parties stipulated that Davenport was a sham transaction. The primary issues at trial were whether the negligence penalty was applicable in the face of the Thompsons' reliance on professional advice, whether the IRS abused its discretion in failing to waive the section 6659 penalty, and whether the section 6621's increased interest rate was applicable to the Thompsons' underpayment.

In addition to testifying on his own behalf, Dr. Thompson presented testimony from Mr. Stewart and Mr. Briscoe. Dr. Thompson testified that he was looking for a long-term investment which would require little supervision, and that the descriptions provided by Mr. Stewart and the offering memorandum indicated the plastics recycling venture was such an investment. Mr. Stewart testified as to the information he provided Dr. Thompson and described his own personal investigation of and investment in Davenport. Mr. Briscoe testified that it could not be determined from his reading of Davenport's offering memorandum and the Schedule K-1 that Davenport would later be determined an abusive tax shelter.

The government presented no witnesses and moved for judgment as a matter of law. The district court denied the motion, overruled the government's objections to several jury instructions, and submitted the case to the jury. The jury returned a verdict in favor of the Thompsons on all issues. The district court

denied the government's renewed motion for judgment as a matter of law and its motion for new trial.

On appeal, the government reasserts the three main arguments it made at trial. It first argues the evidence was insufficient to support the jury instruction allowing reliance on the advice of a professional as a defense to the section 6653 negligence penalty. It next contends the evidence was insufficient to support the instruction given on the section 6659 penalty. Finally, it challenges the jury instruction given on the section 6621(c) increased-interest penalty as an incorrect statement of the law. We address each argument in turn.

## II

### A. *Reliance Instruction*

Over the government's objection, the district court instructed the jury that reasonable, good-faith reliance on the advice of a professional advisor constitutes a defense to the negligence penalty provided by section 6653. After the jury returned a verdict in favor of the Thompsons, the government argued in its motion for new trial that the evidence was insufficient to support this instruction, and that this erroneous instruction infected the jury's findings on the section 6659 and section 6621(c) issues.

We review de novo whether the district court properly instructed on the

applicable law, and we review the court's decision to give or deny a particular instruction for an abuse of discretion. *See Wheeler v. Koch Gathering Sys., Inc.*, 131 F.3d 898, 903 (10th Cir. 1997). "Jury instructions should be given only if they are supported by competent evidence." *Federal Deposit Ins. Corp. v. UMIC, Inc.*, 136 F.3d 1375, 1382 (10th Cir. 1998). On appeal, the government places great weight on our unpublished decision in a similar case, *Gilmore & Wilson Constr. Co, v. Commissioner*, Nos. 97-9024, 97-9026, 97-9027, 1999 WL 11301 (10th Cir. Jan. 13, 1999), where we upheld the tax court's conclusion that reliance on Mr. Stewart's advice in that case was unreasonable due to his failure to make an adequate investigation. *See id.,* at *6. The government also asserts that Mr. Stewart's testimony may not be the basis for the reliance-on-a-professional instruction because he had no expertise in plastics recycling, was not an investment adviser by profession, and did not have a professional relationship with Dr. Thompson because Dr. Thompson never paid him for his advice.

We disagree with the government's assertion that our holding in *Gilmore & Wilson* is dispositive of the issue here.[7] In that case we reviewed the tax court's factual determination, made after a bench trial, that the taxpayers were negligent. Here we consider the more limited question of whether a reliance instruction was

_____

[7]Although an unpublished decision does not constitute binding precedent, we will address the *Gilmore & Wilson* decision because it assists us in our disposition here. *See* 10th Cir. R. 36.3(B)(2).

warranted. Had we been presented with such a question in *Gilmore & Wilson*, we would likely have upheld the instruction. *See id.* at \*5 ("The evidence introduced, both at trial and through stipulation, presents a close question regarding whether taxpayers were negligent."). For this reason, the government's reliance on *Gilmore & Wilson* is misplaced.[8]

The government's other arguments are similarly unpersuasive. First, Mr. Stewart does not have to be an expert in the industry or an "investment advisor" in order for reliance on his advice to be reasonable. *See Anderson v. Commissioner*, 62 F.3d 1266, 1271 (10th Cir. 1995) (taxpayers may rely on advice from accountants and attorneys, as well as financial advisors). It is sufficient that he has expertise in financial advisement, accounting, or tax matters. *See id.*; *see also Chakales v. Commissioner*, 79 F.3d 726, 730 (8th Cir. 1996) ("a taxpayer may reasonably rely on advice when that advice involves the application of the attorney's or accountant's relevant expertise"). Second, Mr. Stewart did in fact have a professional relationship with Dr. Thompson – he was Dr. Thompson's accountant for his business transactions through Surgical Associates. *See, e.g.*, *Zfass v. Commissioner*, 118 F.3d 184, 188 n.3 (4th Cir. 1997) (it is sufficient that

---

[8]Even if our decision in *Gilmore & Wilson* were relevant here, critical to our determination in that case was Mr. Stewart's failure to determine whether the company had an operating history or an established market for the recyclers. *See Gilmore & Wilson*, 1999 WL 11301, at \*6. In this case, to the contrary, the jury heard testimony that Mr. Stewart received information regarding locations and markets for the machines.

the accountant was involved in the taxpayer's business affairs). The government has not cited any cases requiring the taxpayer to show some extra level of privity with the professional for a reliance instruction to be appropriate.

Finally, the evidence was more than sufficient for the district court to give this instruction. The jury heard extensive testimony regarding Mr. Stewart's expertise in giving advice and handling Surgical Associates' tax matters, his investigation of Davenport and his conclusions therefrom, and the information he passed on to Dr. Thompson. Despite the government's strenuous arguments that this testimony was insufficient to show the Thompsons' reliance was reasonable, the fact-finder here "accorded the evidence different weight than the [government does] and drew different conclusions from it than the [government] would have had it draw. It was up to the . . . trier of fact, to decide what weight to give the undisputed evidence and what inferences to draw in the first instance." *Anderson*, 62 F.3d at 1270 n.8.

For all of these reasons, we conclude the district court did not abuse its discretion when it gave the reliance instruction.

### B. Section 6659 Penalty

Section 6659 provided that a penalty may be assessed against a taxpayer who makes an underpayment attributable to a valuation overstatement. *See* 26

-10-

U.S.C. § 6659(a) (*repealed* 1989). The Commissioner of the IRS had the authority to waive this penalty if the taxpayer established a reasonable basis for the valuation and that it was made in good faith. *See id.* § 6659(e). The district court instructed the jury that it could find the Commissioner abused his discretion by failing to waive this penalty if it determined the Thompsons had reasonable cause for taking the Davenport deduction and acted in good faith when doing so.

At trial, the government unsuccessfully argued the evidence was insufficient to support this instruction, and it renews this argument on appeal. As discussed above, the Thompsons' only evidence of a reasonable good-faith basis for the valuation was their reliance on professional advice. Accordingly, the government's argument that the evidence was insufficient to support the good faith instruction rests solely on its assertion that the evidence was insufficient to support reliance on Mr. Stewart's advice, a contention we rejected in the previous section. The evidence of reasonable reliance on professional advice was sufficient for the jury to consider whether the Thompsons had a reasonable good-faith basis for accepting the valuation as they did.

The government contends for the first time on appeal that a taxpayer must formally request a waiver of the section 6659 penalty from the Commissioner before filing suit. To support this argument, the government cites us to *McCoy Enters. Inc., v. Commissioner*, 58 F.3d 557 (10th Cir. 1995), where we held the

Commissioner's failure to waive a section 6661 penalty would not be reviewed in the absence of a request for a waiver. *See id.* at 563-64. The government's failure to raise this issue in the district court precludes our consideration of it here. *See Tele-Communications, Inc. v. Commissioner*, 12 F.3d 1005, 1007 (10th Cir. 1993). As we stated in *Tele-Communications*:

> The general rule is that an appellate court will not consider an issue raised for the first time on appeal. Exceptions to the general rule are rare . . . and are "generally limited to cases where the jurisdiction of a court to hear a case is questioned, sovereign immunity is raised, or when the appellate court feels it must resolve a question of law to prevent a miscarriage of justice." The policies behind the general rule and its narrow exceptions include respect for the lower court, unfair surprise to the other party, and the "need for finality in litigation and conservation of judicial resources."
>     It is within our discretion to decide on a case-by-case basis which questions to address for the first time on appeal. After reviewing the record in this case, we find no basis for an exception to the general rule. The Commissioner could have argued this theory to the [district court] and states no reason why she did not.

*Id.* (citations omitted). Similarly, the government could have raised the waiver request issue below, giving the district court and the Thompsons an opportunity to respond and the jury an opportunity to consider the issue. Because the government failed to do so, we will not disturb the jury's finding. The district court's decision to give this instruction was not an abuse of discretion.

## C.  Section 6621(c) Increased-Interest Penalty

Section 6621(c) increased the interest rate on any "substantial

underpayment attributable to tax motivated transactions" to 120 percent of the applicable rate. *See* 26 U.S.C. § 6621(c)(1) (*repealed* 1989). This section further defined the term "tax motivated transaction" as, inter alia, "any sham or fraudulent transaction." *Id.* § 6621(c)(3)(A)(v). The Thompsons conceded Davenport was a sham. They nevertheless proposed instruction No. 17, which stated that if the jury found the Thompsons invested in Davenport expecting to make a profit, it must find the section 6621(c) penalty inapplicable. The government objected to this instruction, arguing that the plain wording of the statute subjected the Thompsons to the penalty and made the investor's personal motivations irrelevant. The district court disagreed and submitted the issue to the jury with the proposed instruction. The government unsuccessfully reasserted this argument in its post-verdict motion for judgment as a matter of law.

We review jury instructions de novo to determine whether they accurately informed the jury of the governing law. *See Wheeler*, 131 F.3d at 903. We also review de novo a district court's denial of a motion for judgment as a matter of law. *See Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 549 (10th Cir. 1999).

The government cites *Anderson*, 62 F.3d 1266, for the proposition that the motives of individual investors are immaterial when determining section 6621(c) applicability. According to the government, the only factual determination to be made under section 6621(c)(3)(A)(v) is whether the venture was a sham

transaction.  Where the partnership was admittedly a sham, the government contends section 6621(c) mechanically applies to all the investors' underpayments attributable to that venture.

We are compelled to agree with the government that this issue is controlled by *Anderson*, 62 F.3d at 1274.  The Andersons raised the argument the Thompsons make here, and this court answered it with the following statement:

> The Andersons' argument might have some merit if the statute made the taxpayer's motivation for entering into the transaction the determining factor.  However, where the "tax motivated transaction" is a "sham or fraudulent transaction," the taxpayer's motivation is irrelevant.  The Andersons stipulated that the [investment] was a sham.  Therefore, the Andersons are liable for increased interest under section 6621.

*Id.*  In other words, section 6621(c) simply leaves no room for consideration of the individual taxpayer's motivation when the taxpayer concedes the transaction was a sham.  *See also Thomas v. United States*, 166 F.3d 825, 834 (6th Cir. 1999) ("by its plain language I.R.C. § 6621(c) imposes no inquiry into the taxpayer's investment motive when the transaction is found to be a sham").  *But see Heasley v. Commissioner*, 902 F.2d 380, 385-86 (5th Cir. 1990) (court reversed imposition of increased interest where tax court failed to consider taxpayer's profit motive, notwithstanding investors conceded an overvaluation which was listed as a "tax-motivated transaction" under section 6621(c)(3)(A)(i)).

When overruling the government's motion for judgment as a matter of law,

-14-

the district court concluded that section 6621(c) does not place strict liability on innocent, non-negligent investors who invest in a partnership that is later determined to be a sham. We sympathize with the district court's conclusion, but as was noted by one judge in *Thomas*:

> [I]t might well be more just that taxpayers who unwittingly enter into sham transactions in hopes of making a profit should not be treated as harshly as taxpayers who do so knowing full well that they are engaging in a sham. Unfortunately, this is not the law, which is dictated here by the inflexible terms of § 6621(c) and the law defining "sham transactions."

*Thomas*, 166 F.3d at 834-35 (Boggs, J., concurring). Of necessity, we reverse the district court's denial of the government's motion for judgment as a matter of law with respect to the increased-interest penalty of section 6621(c).

**III**

In sum, the evidence supported the jury instructions given on sections 6653 and 6659. The jury here found that the taxpayers were not negligent, and that finding supports its additional determination that the IRS abused its discretion in failing to waive the section 6659 penalty. However, because the Thompsons conceded that Davenport was a sham transaction, the section 6621(c) increased-interest penalty was applicable and the district court's determination to the contrary must be reversed.

We **AFFIRM** in part and **REVERSE** in part the judgment of the district

-15-

court.