T.C. Memo. 2001-16


UNITED STATES TAX COURT


MICHAEL G. HARVEY AND PENNY B. HARVEY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 9527-99.                    Filed January 25, 2001.


<u>Joel N. Crouch</u> and <u>Sarah Q. Qureshi</u>, for petitioners.

<u>Rodney J. Bartlett</u>, for respondent.


MEMORANDUM OPINION

DINAN, <u>Special Trial Judge</u>:  Respondent determined that
petitioner was liable for the following additions to tax for
taxable year 1982:  $452.25 under section 6653(a)(1), 50 percent
of the interest due on a $9,045 deficiency under section
6653(a)(2), and $2,261.25 under section 6661.  Unless otherwise

indicated, section references are to the Internal Revenue Code in effect for the year in issue.

The issues for decision are: (1) Whether petitioners are liable for additions to tax for negligence under section 6653(a), and (2) whether petitioners are liable for the addition to tax for a substantial understatement under section 6661. The issues in this case concern the participation of petitioner husband (Mr. Harvey or petitioner) as a limited partner in Yuma Mesa Jojoba, Ltd. ("Yuma Mesa" or "the partnership").[1]

Some of the facts have been stipulated and are so found. The stipulations of fact and the attached exhibits are incorporated herein by this reference. Petitioners resided in Norman, Oklahoma, on the date the petition was filed in this case.

---

[1]The underlying deficiency in this case is based upon a computational adjustment made by respondent in accordance with partnership level adjustments. Those adjustments were upheld by this Court in Cactus Wren Jojoba, Ltd. v. Commissioner, T.C. Memo. 1997-504. In that case, this Court reviewed respondent's determinations with respect to Yuma Mesa and a related partnership. We held that the partnerships did not directly or indirectly engage in research or experimentation and that the partnerships lacked a realistic prospect of entering into a trade or business. In upholding respondent's disallowance of $1,298,031 in research and experimental expenditures claimed by Yuma Mesa, we described the research and development agreement entered into by the partnership as "mere window dressing, designed and entered into solely to decrease the cost of participation in the jojoba farming venture for the limited partners through the mechanism of a large upfront deduction for expenditures that in actuality were capital contributions." Id.

Mr. Harvey currently teaches international business and conducts research at the University of Oklahoma. He has received a bachelor's degree in business administration (marketing), a master's degree in business administration, a second master's degree in marketing research, and a doctorate in marketing and international sociology. However, he has no tax background, and his accounting background is limited to two accounting classes. His teaching and writing encompass neither accounting nor tax. Petitioner wife (Ms. Harvey) has received a bachelor's degree in secondary education.

Beginning in 1967, Mr. Harvey was involved in the formation and operation of a business that reconditioned and then sold trucks. He ran the business for a period of 2-1/2 years, after which time he became a minority shareholder until the business was terminated in 1982.

During 1982, the year in issue, Mr. Harvey was a professor of international marketing at Southern Methodist University, he was the sole proprietor of a consulting business which generated $86,766 in gross receipts and a $71,091 profit, and he was the sole proprietor of a trucking business (separate from the business discussed above) which generated $83,157 in gross receipts and a $19,610 loss.

Mr. Harvey's introduction to jojoba occurred about 1970 through 1972 through discussions he had with two neighbors.

These neighbors happened to be doctoral students of archaeology and anthropology who were conducting research related to the history of jojoba. Mr. Harvey was reacquainted with jojoba in 1982 by Marlin Peterson. Mr. Peterson, a certified public accountant, is petitioners' accountant and has prepared their tax returns since around 1974. When Mr. Harvey and Mr. Peterson first discussed jojoba in November 1982, Mr. Peterson was in the planning stages of the jojoba investment. Mr. Harvey discussed the investment with Mr. Peterson when Mr. Harvey met with him and another of his clients at a lunch which was both social and for the purpose of discussing tax matters. After meeting with Mr. Peterson, Mr. Harvey met with Rick Avery, president of Anderson-Clayton Food Company. Mr. Avery had access to research which had been conducted relating to potential uses of jojoba in the food industry. Mr. Harvey learned from this meeting that the insufficient supply of jojoba was at least in part prohibiting its use in food products. Mr. Harvey then discussed jojoba with a health food store owner, who provided him with materials relating to jojoba's properties and uses.

Mr. Harvey also obtained, and carefully reviewed, a copy of the private placement memorandum distributed by the promoters of Yuma Mesa. According to this document, the partnership was organized "to engage in research and development and, thereafter, participate in the marketing of the products of the jojoba

plant." Interests in the partnership were offered for $12,245 each, payable by cash of $3,571 and a 4-year promissory note of $8,674 bearing 10 percent annual interest.

Yuma Mesa was organized as a limited partnership, with two co-general partners. The general partners, G. Dennis Sullivan and William Woodburn, were lawyers; the private placement memorandum listed no experience of either outside the legal field. Yuma Mesa was to enter into a "Research and Development Agreement" with Hilltop Plantations, Inc. (Hilltop), which would in turn enter into a farming subcontract with its wholly owned subsidiary, Mesa Plantations, Inc. (Mesa). Hilltop was then to enter into an "Experimental Agricultural Lease" with Hilltop Ventures, a general partnership with identical ownership as Hilltop. This lease was to be assigned to Mesa upon completion of the research and development. Finally, Hilltop was to enter into a "Research and Development Management Agreement" with Agricultural Investments, Inc., which was to be the "manager" of the project.

Hilltop (as well as Mesa and Hilltop Ventures) was controlled by four individuals. These individuals were Raymond H. Meinke (president, director, and shareholder), Keith A. Damer (vice president, secretary, director, and shareholder), Mr. Peterson (vice president, treasurer, director, and shareholder), and Cecil R. Almand (shareholder). The three officer/directors

of Hilltop were all listed as certified public accountants with expertise in the tax field.  The private placement memorandum listed no experience of any of the officer/directors or shareholders which is relevant to the farming of jojoba.

The private placement memorandum contained language specifically alerting investors to the planned deduction of the "research and development" costs, as well as other tax risks involved in making an investment in the partnership.  The document also contained an opinion letter stating that the research and development agreement contained therein met the requirements of section 174.  Potential investors were required to provide information concerning any previous experience in tax shelter investments, and the subscription agreement required investors to initial a statement that the investor had been advised to consult with an attorney concerning the tax consequences of the investment.

Several weeks after meeting with Mr. Peterson, Mr. Harvey decided to invest in the partnership.  Mr. Harvey made his investment because he felt he had insider knowledge concerning jojoba and because he thought demand for the product was sufficient to meet a larger supply.  Petitioner did not research the possible yield per acre of a jojoba plantation, did not analyze production costs, did not independently investigate the available markets or means of transporting the jojoba to

purchasers, and did not make any financial projections regarding the product.

Petitioner purchased two interests in Yuma Mesa. On December 30, 1982, he executed a subscription agreement, a promissory note in the amount of $17,348, and a partnership agreement. Petitioner subsequently was issued a Schedule K-1 by the partnership which reflected a $23,174 ordinary loss for taxable year 1982.

On their joint Federal income tax return for 1982, petitioners reported the following amounts of income and losses:

| | |
|---|---|
| Wages (University) | $43,978 |
| Interest | 984 |
| Business (Consulting) | 71,091 |
| Business (Trucking) | (19,610) |
| Royalties | 2,878 |
| Yuma Mesa partnership | (23,174) |
| S corporation | (79) |
| Total income | 76,068 |

In the years following his investment in 1982, petitioner received and reviewed financial statements and progress reports. The reports were semiannual or quarterly, and discussed the progress or problems at the sites. At one point, petitioner traveled to the plantation in Yuma, where he spent approximately 1½ days. While there, he spoke with individuals involved in the project to ascertain the progress being made and the outlook for the jojoba development. The partnership failed in 1987.

The private placement memorandum provided projections of estimated cash expenditures and tax savings associated with

investments in the partnership. These projections, adjusted to two interests, together with petitioner's actual cash expenditures, are as follow:

|  | Cash Expenditures | | Tax Savings |
| Year | Projected | Actual | Projected |
| 1982 | $9,782 | $8,439 | $11,998 |
| 1983 | 5,280 | 5,186 | 764 |
| 1984 | 5,280 | 5,186 | 572 |
| 1985 | 5,280 | 5,186 | 360 |
| 1986 | 2,640 | 3,888 | 152 |
|  | 28,262 | 27,885 | 13,846 |

Petitioners' claimed loss from Yuma Mesa for taxable year 1982 was disallowed in the computational adjustment which was made pursuant to the partnership level proceedings, resulting in a $9,045 deficiency. Respondent issued petitioners a statutory notice of deficiency determining additions to tax under sections 6653(a)(1), 6653(a)(2), and 6661, in the respective amounts of $452.25, 50 percent of the interest due on a $9,045 deficiency, and $2,261.25.

The first issue for decision is whether petitioners are liable for additions to tax for negligence under section 6653(a)(1) and (2). Section 6653(a)(1) imposes an addition to tax equal to 5 percent of the underpayment of tax if any part of the underpayment is attributable to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) provides for a further addition to tax equal to 50 percent of the interest

due on the portion of the underpayment attributable to negligence or intentional disregard of rules or regulations.

Negligence is defined as "lack of due care or failure to do what a reasonable and prudent person would do under similar circumstances." Anderson v. Commissioner, 62 F.3d 1266, 1271 (10th Cir. 1995), affg. T.C. Memo. 1993-607. Petitioners argue that Mr. Harvey was not negligent because he relied on the advice of a professional, Mr. Peterson. Reliance on professional advice may be a defense to the negligence penalties. See id. The advice must be from competent and independent parties, not from the promoters of the investment. See LaVerne v. Commissioner, 94 T.C. 637, 652 (1990), affd. without published opinion sub nom. Cowles v. Commissioner, 949 F.2d 401 (10th Cir. 1991), affd. without published opinion 956 F.2d 274 (9th Cir. 1992); Rybak v. Commissioner, 91 T.C. 524, 565 (1988). We hold that petitioner's reliance on any advice[2] from Mr. Peterson was not reasonable because it was not from an independent source. As such, this reliance cannot be a defense to negligence.

---

[2]The advice petitioner received from Mr. Peterson was apparently only in the context of Mr. Peterson's preparation of petitioners' tax return. Mr. Harvey testified that he never discussed the tax implications of the investment with Mr. Peterson.

Petitioners argue that reliance on an adviser who is a promoter may be reasonable under precedents from the Court of Appeals for the Tenth Circuit, to which appeal lies in this case. The first case petitioners cite is Anderson v. Commissioner, supra. In Anderson, the taxpayer relied on both an investment adviser and an accountant in making his investment. The court found that reliance on the investment adviser, who received a commission for selling the investment to the taxpayer, was reasonable under the circumstances of the case. However, the court stressed that the investment adviser was not affiliated with the corporation which had entered into the agreement with the taxpayers. On the contrary, the adviser was an independent insurance agent and registered securities dealer who presumably would have received a commission on any investment he sold to the taxpayer. See id. at 1271.

The second case petitioners cite is the unpublished opinion of Gilmore & Wilson Constr. Co. v. Commissioner, 166 F.3d 1221, 83 AFTR 2d 99-457, 99-1 USTC par. 50,186 (10th Cir. 1999), affg. Estate of Hogard v. Commissioner, T.C. Memo. 1997-174.[3] In that

_____

[3]Gilmore & Wilson Constr. Co. is an unpublished opinion of the Court of Appeals for the Tenth Circuit. Although unpublished decisions generally are not binding precedent in the Tenth Circuit and citation thereto is disfavored, that court allows citation to such a decision where "(1) it has persuasive value with respect to a material issue that has not been addressed in a published opinion; and (2) it would assist the court in its disposition." 10th Cir. Rule 36.3. Gilmore & Wilson Constr. Co.

(continued...)

case, the taxpayers relied upon their accountant for investment advice. Following <u>Anderson</u>, the court noted that the fact that the accountant was entitled to receive compensation for the taxpayers' investment does not make that advice per se unreasonable: "the mere fact that * * *[the adviser] received compensation for taxpayers' reliance on his advice does not turn him into a promoter whose advice cannot be considered independent." <u>Gilmore & Wilson Constr. Co. v. Commissioner</u>, <u>supra</u>. As in <u>Anderson</u>, the court noted that the accountant was not in any way affiliated with the partnerships related to the investment (other than a personal investment in one of them).

In the case at hand, unlike <u>Anderson</u> and <u>Gilmore & Wilson Constr. Co.</u>, Mr. Peterson was involved in Yuma Mesa from the planning stages through its operation. He was a promoter of the partnership and was an officer and director of the corporation which entered into the research and development agreement with it. Mr. Peterson falls far outside the role of an adviser who simply received commissions from independent entities upon the

---

³(...continued)
was discussed by the Court of Appeals for the Tenth Circuit in accordance with its rule 36.3 in <u>Thompson v. United States</u>, 223 F.3d 1206, 1210 n.7 (10th Cir. 2000), which was decided after the briefs were filed in this case. The court in <u>Thompson</u>, however, addressed "the more limited question of whether a reliance instruction was warranted"; i.e., whether the district court abused its discretion in instructing the jury that reliance on a professional was a defense to the negligence penalties. <u>Id.</u> at 1210.

sale of an investment. Rather, he was integrally involved in the partnership, and consequently petitioners' reliance on any advice from him was not reasonable.

We are convinced that petitioner intended to make an actual investment in Yuma Mesa and not merely derive a tax benefit therefrom. Petitioner, for example, performed some investigation into the potential of jojoba prior to investment, monitored the investment after it was made, and made payments to the partnership in an amount greater than the tax benefits expected to be derived. We nevertheless find that petitioner was negligent within the meaning of section 6653(a) with respect to taxable year 1982. First, despite petitioner's substantial business background in both academia and the business world, he did not make any financial projections for the investment, and he did little to investigate the investment beyond a limited inquiry into the uses of and possible demand for jojoba. Second, petitioner participated in an investment which was organized and promoted by tax lawyers, and which involved warnings in the private placement memorandum concerning tax risks and the need to obtain legal advice. In addition, petitioner claimed a $23,174 ordinary loss for 1982, despite the fact that he had invested only $9,782 in cash in the partnership via a subscription agreement dated December 30, 1982; such a disproportionate and accelerated loss should also have alerted petitioner to the need

for outside advice regarding the propriety of its deduction. Despite these warnings, petitioner was not concerned with the tax risks, and consequently neither personally investigated the tax implications of the investment nor sought outside legal advice related to them.  Instead, he relied on Mr. Peterson's treatment of the loss when it came time to complete petitioners' tax return.

Because we hold that petitioner was negligent and that petitioners' reliance upon Mr. Peterson was not reasonable, we uphold respondent's determination that petitioners are liable for the section 6653(a)(1) and (2) additions to tax for negligence.

The second issue for decision is whether petitioners are liable for the addition to tax under section 6661 for a substantial understatement of tax.  Section 6661(a), as amended by the Omnibus Budget Reconciliation Act of 1986, Pub. L. 99-509, sec. 8002, 100 Stat. 1951, provides for an addition to tax of 25 percent of the amount of any underpayment attributable to a substantial understatement of income tax for the taxable year.  A substantial understatement of income tax exists if the amount of the understatement exceeds the greater of 10 percent of the tax required to be shown on the return, or $5,000.  See sec. 6661(b)(1)(A).  Generally, the amount of an understatement is reduced by the portion of the understatement which the taxpayer shows is attributable to either (1) the tax treatment of any item

for which there was substantial authority, or (2) the tax treatment of any item with respect to which the relevant facts were adequately disclosed on the return. See sec. 6661(b)(2)(B). If an understatement is attributable to a tax shelter item, however, different standards apply. First, in addition to showing the existence of substantial authority, a taxpayer must show that he reasonably believed that the tax treatment claimed was more likely than not proper. See sec. 6661(b)(2)(C)(i)(II). Second, disclosure, whether or not adequate, will not reduce the amount of the understatement. See sec. 6661(b)(2)(C)(i)(I).[4]

Petitioners do not argue that they had substantial authority for claiming the loss, nor do they argue that there was adequate disclosure on the return. We find that the record does not establish the presence of either. The only argument petitioners make is that they acted with reasonable cause and in good faith in claiming the loss.

Section 6661(c) provides the Secretary with the discretion to waive the section 6661(a) addition to tax if the taxpayer shows he acted with reasonable cause and in good faith. We review the Secretary's failure to waive the addition to tax for

---

[4]Respondent argues in his brief that "petitioners' claimed loss for 1982 was clearly a tax shelter item," despite the fact that the notice of deficiency stated that the underpayment "is attributable to non-tax shelter items." As a result of our findings we need not decide whether the tax shelter provisions are applicable in this case.

abuse of discretion.  See <u>McCoy Enterprises, Inc. v.</u>
<u>Commissioner</u>, 58 F.3d 557, 562-563 (10th Cir. 1995) affg. T.C.
Memo. 1992-693.  Nothing in the record indicates petitioners
requested a waiver for good faith and reasonable cause under
section 6661(c).  In the absence of such a request, we cannot
review respondent's determination for an abuse of discretion.
See <u>id.</u>

Because petitioners have not established either that they
had substantial authority for their treatment of the partnership
loss or that they adequately disclosed the relevant facts of that
treatment, we uphold respondent's determination on this issue.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.