### Leonard A. ADKERSON, et al., Plaintiffs,

v.

### UNITED STATES of America, Defendant.

### Merrilyn Barker, et al., Plaintiffs,

v.

### United States of America, Defendant.

### Nos. C–95–4229 MHP, C–95–4262 MHP.

United States District Court, N.D. California.

June 13, 2001.

Thomas Moore, U.S. Attorney's Office, San Francisco, CA, for plaintiff.

Benjamin W. Gale, San Rafael, CA, for defendant.

### MEMORANDUM AND ORDER

PATEL, Chief Judge.

In 1995, plaintiffs Leonard Adkerson, Merrilyn Barker and others (collectively "plaintiffs"), brought these actions against defendant United States of America ("government") alleging that the government collected tax penalties from plaintiffs under 26 U.S.C. § 6621(c) without proper authority.[1] Now before the court is the government's motion for summary judgment. Having considered the parties' arguments and submissions, and for the reasons set forth below, the court enters the following memorandum and order.

### BACKGROUND

Gold Depository and Loan Company, Inc. ("GD & L") devised and operated a tax shelter called the Dry Cargo Marine Container Purchase Program ("GD & L program") under which a typical investor might buy $100,000 worth of marine cargo containers with just $4,000 down.[2] GD & L arranged for financing of the unpaid balance. GD & L advised investors that they could then take an investment tax credit of 10% or $10,000, as well as a

---

1. In 1996, the court consolidated C 95–4229 and C 95–4262 as plaintiffs in both actions invested in the same enterprises and the tax consequences complained of are the same.

2. Facts regarding GD & L are taken from *United States v. Laurins*, 857 F.2d 529, 534 (9th Cir.1988), which upheld the conviction of Alex Laurins, GD & L managing director, for obstruction of justice and aiding, abetting and causing contempt of court arising out of the I.R.S.' investigation of GD & L's operations.

depreciation deduction of $15,000, on their tax return for the year of investment.

As described in the court's memorandum and order of July 22, 1996 denying the government's motion to dismiss for failure to state a claim, plaintiffs were limited partners in either Sunshine Transportation Systems ("Sunshine"), Stanley Transport Services ("Stanley"), STS Trucking Service ("STS"), Shamrock Transport Service ("Shamrock"), H.V. Enterprises ("H.V."), or in a combination of these partnerships. Sunshine, Stanley, STS, and Shamrock (collectively "the trucking partnerships") were formed in 1982. H.V. was formed in 1983. Plaintiffs invested in the trucking partnerships and H.V. predominantly for economic profit rather than for tax savings.

Under the control of general partner Harold Coffin ("Coffin"), the trucking partnerships invested approximately half their funds in the GD & L program, with the understanding that GD & L would facilitate the trucking partnerships' purchase and lease of dry cargo marine containers. The trucking partnerships invested the remaining portion of their funds in heavy trucks and trailers, a venture related to plaintiffs' goal of purchasing and leasing cargo containers. H.V. invested approximately half its funds in GD & L and half in a company that manufactured and sold tape recorders.

In their 1982 tax returns, plaintiffs who had invested in the trucking partnerships claimed tax credit and losses pursuant to information received from the trucking partnerships regarding investments in the GD & L program. Some of the plaintiffs carried back investment tax credits to 1979, 1980 and 1981. In their 1983 tax returns, those plaintiffs who invested in

H.V. claimed tax credits and deductions pursuant to information received from H.V. regarding investments in the GD & L program. Some of these plaintiffs carried back investment tax credits to 1980, 1981 and 1982.

In 1984, pursuant to 26 U.S.C. sections 6221, 6223, the Commissioner of the Internal Revenue Service ("I.R.S.") began an audit of the trucking partnerships. The next year, under the same authority, the I.R.S. began an audit of H.V. After discovering that the entire GD & L program was a fraud, namely because GD & L never purchased any cargo containers, the I.R.S. disallowed all the tax credits and many of the losses claimed by plaintiffs in connection with GD & L. The I.R.S. also assessed penalties pursuant to former Internal Revenue Code ("I.R.C.") section 6621(c), codified at 26 U.S.C. § 6621(c).[3] In making the penalty assessments, the I.R.S. calculated interest on the disallowed credits and losses at the increased rate reserved for tax-motivated investments. Plaintiffs paid the penalties in full but thereafter filed claims with the I.R.S. for a refund of the payments. The I.R.S. denied those claims.

Plaintiffs admit that no dry cargo containers ever existed, but claim that they were victims of GD & L's fraud, not knowing participants. Plaintiffs contend that on Coffin's advice they invested in the trucking partnerships and H.V. in good faith, and only subsequently learned that the containers did not exist. As evidence of their good faith and profit motive, plaintiffs who invested in the trucking partnerships maintain that these partnerships actually purchased trucks and semi-trailers and operated a trucking business. These plaintiffs claim that this part of the truck-

---

**3.** Section 6621(c) was repealed by the Omnibus Budget Reconciliation Act of 1989, Pub.L. 101–239, § 7721(b), 103 Stat. 2106, 2399 (1989). The repeal affected tax returns due after Dec. 31, 1989 and thus does not affect this action. *See* Omnibus Budget Reconciliation Act of 1989 § 7721(d).

ing partnerships' business operated at a profit for approximately two years.

In November 1995, plaintiffs filed these actions pursuant to 26 U.S.C. section 7422, which permits certain actions "for the recovery ... of any penalty claimed to have been collected without authority." 26 U.S.C. § 7422(a). Plaintiffs claim that the government had no authority to assess the tax penalties because plaintiffs did not invest in the trucking partnerships or H.V. to achieve tax savings.

## LEGAL STANDARD

### I. Increased Interest

The I.R.C. provides that if a "tax imposed by [the Code] is not paid on or before the last date prescribed for payment, interest on such amount at the underpayment rate established under section 6621 shall be paid for the period from such last date to the date paid." 26 U.S.C. § 6601(a). 26 U.S.C. section 6621(c) imposes an increased rate of interest for "any substantial underpayment attributable to tax motivated transactions." 26 U.S.C. § 6621(c)(1) (imposing interest rate of "120 percent of the underpayment rate established under this subsection"). The statute defines "substantial underpayment attributable to tax motivated transactions" as "any underpayment of taxes ... for any taxable year which is attributable to 1 or more tax motivated transactions if the amount of the underpayment for such year so attributable exceeds $1,000." 26 U.S.C. § 6621(c)(2). Tax motivated transactions include "any sham or fraudulent transaction." 26 U.S.C. § 6621(c)(3)(A)(v).

"A transaction is a sham if it has no purpose or economic effect other than the creation of a tax deduction." *Bail Bonds by Marvin Nelson v. Commissioner*, 820 F.2d 1543, 1548 (9th Cir.1987); *see also Sochin v. Commissioner*, 843 F.2d 351, 354 (9th Cir.1988) (to find that a transaction was a sham, court must determine "whether the transaction had any practical eco-

nomic effects other than the creation of income tax losses"). In this inquiry, courts "typically focus on the subjective aspect of whether the taxpayer intended to do anything other than acquire tax deductions, and the objective aspect of whether the transaction had any economic substance other than creation of tax benefits." *Sacks v. Commissioner*, 69 F.3d 982, 987 (9th Cir.1995); *see also Casebeer v. Commissioner*, 909 F.2d 1360, 1363 (9th Cir. 1990) (quoting *Bail Bonds*, 820 F.2d at 1549) (in determining whether transaction is a sham court asks: 1) has the taxpayer shown that it had a business purpose for engaging in the transaction other than tax avoidance? 2) has the taxpayer shown that the transaction had economic substance beyond the creation of tax benefits?). It is clear, however, that "this formulation cannot be used as a 'rigid two-step analysis.'" *Sacks*, 69 F.3d at 988 (quoting *Casebeer*, 909 F.2d at 1363). Rather, "it is proper for the court to look at all elements of the transaction at issue." *Casebeer*, 909 F.2d at 1366.

■■ "[I]t is well established that the determination of an existing profit motive is made at the partnership level and does not address the subjective intent of the particular partner in question." *Hill v. Commissioner*, 204 F.3d 1214, 1218 (9th Cir.2000); *see also Copeland v. Commissioner*, 2000 WL 765171 (T.C.2000) (stating "in analyzing the economic substance and the profit objective of limited partnership investments, in particular, individual actions of limited partners are not the focus of the analysis;" holding "[i]n light of the lack of profit objective and the lack of economic substance associated with the activities and investments of the ... limited partnerships, petitioners are liable for increased interest under section 6621(c)."). "For limited partnerships the criterion is whether the general partner sought to

make profits for the partnership." *Arrowhead Mountain Getaway, Ltd. v. Commissioner,* 1995 WL 35359 (T.C.1995); *see also Wolf v. Commissioner,* 4 F.3d 709, 713 (9th Cir.1993) ("[p]rofit must be the predominant, primary or principal objective of the general partner"). The mere fact an investor took into consideration the beneficial tax aspects of an investment does not establish that the transaction was a sham; instead, the question is whether the transaction had economic substance. *Sacks,* 69 F.3d at 991.

■ Upon finding that the transaction was a sham or fraudulent, the Commissioner may impose increased interest irrespective of the subjective intent of the taxpayer. *See Hill,* 204 F.3d at 1220 (holding imposition of increased interest was proper when partnership lacked profit motive as " 'tax-motivated transactions' set out in § 6621(c)(3)(A) show a legislative pattern established by Congress which treats violations of certain code sections as implicit violations of § 6621(c)" without requiring "inquiry into the subjective state of mind of the individual making the claim").

■ Taxpayers bear the burden of proof when disputing the I.R.S.' application of the increased interest rate. *See Hill,* 204 F.3d at 1220.

## II. *Summary Judgment*

Summary judgment is proper when the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* The moving party for summary judg-

ment bears the burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.*

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Mere allegations or denials do not defeat a moving party's allegations. *Id.; see also Gasaway v. Northwestern Mut. Life Ins. Co.,* 26 F.3d 957, 960 (9th Cir.1994). Nor is it sufficient for the opposing party simply to raise issues as to the credibility of the moving party's evidence. *See Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.,* 701 F.2d 95, 97 (9th Cir.1983). If the nonmoving party fails to show that there is a genuine issue for trial, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548.

On a motion for summary judgment, the court does not make credibility determinations, for "the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Liberty Lobby,* 477 U.S. at 249, 106 S.Ct. 2505. Inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the motion. *See Masson v. New Yorker Magazine,* 501 U.S. 496, 520, 111 S.Ct. 2419, 2435, 115 L.Ed.2d 447 (1991).

## DISCUSSION

The government argues that this is an easy case. All parties agree that the GD

& L scheme was nothing more than a fraud. In fact, its deviser was convicted of crimes arising out of this scheme and sentenced to a prison term. *See United States v. Laurins,* 857 F.2d 529, 534 (9th Cir.1988). The government contends that as the GD & L investment arrangement was a sham, and section 6621(c)(3)(A)(v) permits the I.R.S. to impose an interest penalty when a sham is found, the I.R.S. acted within its discretion in imposing the interest penalty regardless of the taxpayers' subjective intent.

Plaintiffs counter that the investments at issue were not shams or fraudulent transactions within the meaning of section 6621(c), and thus the government improperly applied the higher interest rate to plaintiffs. Plaintiffs admit that the GD & L transaction was a fraud, but not that it met the definition of a "sham or fraudulent transaction" as defined in the statute. Rather, plaintiffs claim that they were the victims of a massive fraud and should not be penalized for someone else's crime.

There is an inherent equitable appeal to plaintiffs' argument. Yet, equity alone cannot dictate this court's decision. The court must look to the language of the statute as interpreted by the Ninth Circuit to determine whether the I.R.S. properly imposed increased interest under section 6621(c)(3)(A)(v). Upon so doing, the court concludes that it cannot grant the government's motion for summary judgment.

█ The government conflates the two inquiries facing the court. The fact that GD & L bilked investors does not necessarily mean that the investment was a sham or fraudulent transaction for the purposes of the Internal Revenue Code. In making a sham determination for tax code purposes, the court must examine the subjective intent of the general partner. The court then imputes that intent to the partnership as a whole and to the limited partners as individuals. If after this in-

quiry the court finds there was no economic purpose to the transaction other than to acquire tax benefits, the I.R.S. may impose increased interest without further investigation as to any individual partner's motives. *See Hill,* 204 F.3d at 1217; *see also Thomas v. United States,* 166 F.3d 825, 833, 834 (6th Cir.1999) (recognizing that Sixth Circuit precedent "focused on the taxpayers' motive as part of the analysis in deciding whether the transactions were shams," but that "by its plain language I.R.C. § 6621(c) imposes no inquiry into the taxpayer's investment motive when the transaction is found to be a sham"); *Anderson v. Commissioner,* 62 F.3d 1266, 1274 (10th Cir.1995) (holding investor in GD & L program who stipulated that the program was a sham could not challenge increased interest penalty as once a sham is found, "the taxpayer's motivation is irrelevant"); *Chakales v. Commissioner,* 79 F.3d 726, 728 (8th Cir.1996) (stating "Commissioner has authority . . . to assess [increased interest] penalty simply upon a finding that a transaction was a sham;" however, as Chakales had not demonstrated profit motive, court refused to reach issue of whether increased interest could appropriately be applied to "an innocent victim of a fraudulent scheme who entered it in good faith for profit"); *Keeler v. Commissioner,* 243 F.3d 1212, 1221 (10th Cir.2001) ("[I]n light of our holding that the transactions at issue lacked economic substance and were not engaged in for profit, the Commissioner properly subjected taxpayer to an increased interest rate under former I.R.C. § 6621(c) (repealed 1989) on the ground that his underpayments were attributable to tax-motivated transactions."); *Thompson v. United States,* 223 F.3d 1206, 1212 (10th Cir.2000) (imposing "strict liability on innocent, non-negligent investors who invest in a partnership that is later determined to be a sham" despite sympathy for

taxpayers' plight as "section 6621(c) simply leaves no room for consideration of the individual taxpayer's motivation when the taxpayer concedes the transaction was a sham"); *Karr v. Commissioner,* 924 F.2d 1018, 1026 (11th Cir.1991) (holding because petitioner's activity "lacked economic substance, the Tax Court correctly determined that the Karrs' tax liability is subject to the imposition of additional interest pursuant to section 6621(c)").

In its order of July 22, 1996 denying the government's motion to dismiss, the court stated that it needed the benefit of a factual record to determine whether the transactions were shams. *See Adkerson v. United States,* 1996 WL 428348, *3 (N.D.Cal.1996) (citing *Erhard v. Commissioner,* 46 F.3d 1470, 1475 (9th Cir.) (affirming Tax Court's opinion, rendered after six-week trial, that transactions lacked economic substance); *Sochin v. Commissioner,* 843 F.2d 351, 355 (9th Cir.) (affirming Tax Court's conclusion, supported by twenty-eight pages of factual findings, that transactions were shams); *Collins v. Commissioner,* 857 F.2d 1383, 1385, 1387 (9th Cir.1988) (relying on Tax Court's nine pages of factual findings to affirm Tax Court's determination that taxpayers had no profit motive and that investments lacked economic substance)). That still holds true.

■ Although the limited partners may have invested in GD & L with the intent of realizing a profit, they are bound by the motive of the partnership. *See Vorsheck v. Commissioner,* 933 F.2d 757, 758 (9th Cir.1991). That motive is determined by examining the subjective intent of general partner Coffin. The parties have presented dueling affidavits, deposition testimony and documentary evidence as to Coffin's intent. As the court may not make credibility determinations on a motion for summary judgment, and a determination of Coffin's subjective intent will in large part turn on his credibility, the court cannot now grant this motion. *See, e.g., Bunch v. United States,* 1995 WL 319204, *8 (D.Nev.1995) (denying government's motion for summary judgment as to increased interest for a sham transaction as taxpayer "may have reasonably concluded [at the time of his investment] that the Partnership was primarily motivated for profit, and not merely for tax benefits"); *Nicholson v. Commissioner,* 1993 WL 128090 (T.C.1993) (rejecting government's contentions that transactions were shams after finding petitioner's testimony credible in demonstrating that "transactions were intended to have economic significance and not merely to evade taxation").

It does not bode well for plaintiffs that every court to consider the issue of increased interest imposed on GD & L investors has found the GD & L program to be a sham and consequently imposed increased interest. *See, e.g., McPike v. Commissioner,* 1996 WL 55974 (T.C.1996) ("This Court has previously held that the container leasing program promoted by GD & L lacked economic substance and was a factual sham.... Petitioners introduced no evidence that the container leasing program was not a sham. Accordingly, the increased rate of interest applies to the underpayment attributable to all deductions and credits taken with respect to the container program."); *Schafer v. Commissioner,* 1994 WL 652250 (T.C.1994) ("We have considered the GD & L container program in other cases, and have concluded that the containers did not exist, the purported sales transactions were shams, and the program completely lacked economic substance." *E.g., Marcinek v. Commissioner,* T.C. Memo.1993–631; *Anderson v. Commissioner,* T.C. Memo. 1993–607; *Falligan v. Commissioner,* T.C. Memo.1993–606; *Cleland v. Commissioner,* T.C. Memo.1993–589; *Amsler v. Commissioner,* T.C. Memo.1993–289 (the GD &

L program was a factual sham); *Shortal v. Commissioner*, T.C. Memo.1992–560 ("the GD & L program was completely lacking in economic substance and was simply a sham"); *Weiler v. Commissioner*, T.C. Memo.1990–562. "Petitioner has not shown that his GD & L transaction is distinguishable from those in the cases cited above."). *Cf. Pelham v. Commissioner*, 1993 WL 364820 (T.C.1993) (stating transaction has previously been found to be a sham, but that petitioner was not liable for addition to tax for negligence). However, each case must be judged on its specific facts, and therefore, the court will thoroughly explore the motives behind the various partnerships' investments with GD & L.

Given the conflicting evidence, the court finds that plaintiffs have demonstrated that there exists a genuine issue as to whether the transactions had practical economic effects and thus whether the I.R.S. properly assessed the interest rate applicable to tax motivated transactions. The action must proceed.

*CONCLUSION*

For the foregoing reasons, the court hereby DENIES defendant's motion for summary judgment.

IT IS SO ORDERED.